[No. C050586. Third Dist. Nov. 30, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
KHARI NORMAN, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part I of the Discussion.

**COUNSEL**

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Mary Jo Graves and Stan Cross, Assistant Attorneys General, and Susan J. Orton, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**SIMS, Acting P. J.**—In this case, we confront the most common species of instructional error in criminal cases: the failure to give a jury unanimity instruction. Here, we cannot find the error harmless and therefore reverse the judgment.

A jury found defendant Khari Norman guilty of receiving stolen property (Pen. Code, § 496, subd. (a))[1] and petty theft with a prior (§ 666). Defendant contends there was insufficient evidence to support his conviction for theft and the trial court erred in failing to provide the jury with a unanimity instruction. We agree with his second contention and reverse the judgment.

## BACKGROUND

In the early morning hours of February 13, 2004, James Stanger heard noises outside his apartment. He looked outside and saw two people, defendant and Ernest Sheets, around the apartment's cluster mailboxes. Those cluster mailboxes served 80 to 100 mail patrons. Stanger called neighborhood security and, when they did not respond, he called the police.

During the next 60 to 90 minutes, Stanger heard "the banging of the mailboxes and the doors of the mailboxes." He would periodically look outside and confirm that the two men were still there. When the police finally arrived, Stanger heard the two men run away. He called the police and told them which way the men had run. Stanger told officers that one suspect was wearing a red and gold 49ers jacket and the other was wearing a black "painter" hat.

Sacramento Police Officers Gautier and Chipp arrived at the apartment complex at 3:48 a.m. They went to the cluster mailboxes and found the boxes pried open and hanging on their hinges, and fliers and "junk mail" (but no "regular" mail) scattered on the ground. Footprints in the mud beneath the mailboxes had distinctive logos and tread patterns. The officers searched the area but were unable to locate the two men.

As the officers continued their search, they found a maroon Dodge Stratus parked on the street outside the apartment complex, approximately 20 feet from an unlocked gate leading into the complex. Officer Gautier ran a check on the license plate and determined the car had been reported as stolen. Gautier saw tools, car stereos, and large quantities of loose mail in the stolen car. The mail was primarily on the backseat but some was on the floor of the

---

[1] Undesignated statutory references are to the Penal Code.

front passenger side. The car was unlocked so Gautier opened the door, opened the hood, and disabled the car. He and other officers who had arrived in the interim then hid in the area.

Approximately 30 minutes later, defendant and Sheets approached the stolen car. Sheets was wearing a 49ers jacket and defendant was wearing a black hat. Sheets got into the driver's side of the car, while defendant got in the passenger's side. At this point, officers approached and arrested both men.

When defendant was searched, officers found two small flashlights and a small pry bar in his pockets. Two keys resembling mailbox keys fell to the ground below defendant when he got up from the ground to be searched. Defendant claimed to have found the flashlights and keys inside the car. Sheets denied being near the mailboxes and claimed he came to the apartment complex to visit an unidentified friend. Sheets's wallet contained credit cards, automatic teller cards, and other merchant cards in the names of other people. It also contained a photograph of his cousin. Sheets also had the keys to the stolen car on him when he was arrested.

Officer Chipp visually compared the shoes that defendant and Sheets were wearing with the footprints in the mud around the mailboxes and found them to match. Officers brought Stanger to the scene where Stanger positively identified defendant and Sheets as the men he saw at the cluster mailboxes.

United States Postal Inspector Anthony Wick collected and sorted the large volume of mail seized from the stolen car. Two hundred sixty-three pieces of mail from 68 victims were retrieved from the car. The mail included checks, credit card statements, tax documents, bank statements, utility bills, motor vehicle information, magazines, and "junk mail." The mail had been taken from various parts of Sacramento but more than 30 pieces of mail had been taken within the general area of Stanger's apartment complex. None of the mail was addressed to defendant or Sheets. In Wick's experience, thieves do not sort the mail while stealing it, although he had seen situations where "junk mail" had been left behind. Thieves often use information from bills to commit identity theft.

One of the credit cards found in Sheets's wallet belonged to Mark Malloy of south Sacramento. Malloy had been expecting a new credit card in the mail, as his was due to be renewed. Malloy did not know Sheets or defendant. His residence had community or "pigeon box" mailboxes and there had been signs of forced entry into the mailbox.

A February 2004 bank statement, a dental bill, and a credit card offer, each belonging to Andres Alvarado, were retrieved from the stolen car. Alvarado

had not given defendant or Sheets permission to have this mail. Alvarado lived at an address with large banks of "pigeon boxes" for mailboxes. Other items of mail found in the stolen car included a check from the California State Controller belonging to Lucille and Mark Stacy, and a United States Treasury check belonging to David Fredrickson.

The stolen car belonged to Darryl Greenlee. It had been stolen on December 3, 2003, after Greenlee had left it running in the driveway while he went back inside the house for a minute.

## DISCUSSION

### I

### Substantial Evidence of Theft[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II

### Failure to Give Unanimity Instruction

Defendant contends the trial court committed reversible error by failing to give a unanimity instruction (CALJIC No. 17.01; now Judicial Council of Cal. Crim. Jury Instns. (2006–2007) CALCRIM No. 3500) sua sponte. We agree.

"In a criminal case, a jury verdict must be unanimous. (*People v. Collins* (1976) 17 Cal.3d 687, 693 [131 Cal.Rptr. 782, 552 P.2d 742]; see Cal. Const., art. I, § 16 [expressly stating that 'in a civil cause three-fourths of the jury may render a verdict' and thereby implying that in a criminal cause, only a unanimous jury may render a verdict].) . . . Additionally, the jury must agree unanimously the defendant is guilty of a *specific* crime. (*People v. Diedrich* (1982) 31 Cal.3d 263, 281 [182 Cal.Rptr. 354, 643 P.2d 971].) Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. (*People v. Castro* (1901) 133 Cal. 11, 13 [65 P. 13]; *People v. Williams* (1901) 133 Cal. 165, 168 [65 P. 323]; CALJIC No. 17.01; but see *People v. Jones* (1990) 51 Cal.3d 294 [270 Cal.Rptr. 611, 792 P.2d 643].)

"This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is

---

[*]See footnote, *ante*, page 460.

no single offense which all the jurors agree the defendant committed.' (*People v. Sutherland* (1993) 17 Cal.App.4th 602, 612 [21 Cal.Rptr.2d 752].) For example, in *People v. Diedrich, supra,* 31 Cal.3d 263, the defendant was convicted of a single count of bribery, but the evidence showed two discrete bribes. We found the absence of a unanimity instruction reversible error because without it, some of the jurors may have believed the defendant guilty of one of the acts of bribery while other jurors believed him guilty of the other, resulting in no unanimous verdict that he was guilty of any specific bribe. (*Id.* at pp. 280–283.) 'The [unanimity] instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done something sufficient to convict on one count.' (*People v. Deletto* (1983) 147 Cal.App.3d 458, 472 [195 Cal.Rptr. 233].)" (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 [108 Cal.Rptr.2d 436, 25 P.3d 641].)

Here, the information charged defendant with receiving stolen property and theft, with both charges referencing "approximately 300 pieces" of mail. The jury found defendant guilty of both counts "as charged in . . . the Information."

According to the prosecution's version of the events, defendant committed two separate thefts—the theft of the mail found in the stolen car, and the theft of mail from the apartment complex. The prosecution did not make an election as to which acts were to constitute the theft and, during closing argument to the jury, *specifically argued both* the theft of the mail in the car and the theft of the mail from the apartment complex.

With respect to the crime of theft, the prosecutor first argued with respect to codefendant Sheets, noting "the exact same charge" was also charged against defendant, as follows:

"We have all this mail here that was stolen from several different addresses and several different places in Sacramento. But none of the mail there goes to any of the addresses at [the apartment complex], the place where they were actually caught, the places where the mailboxes are broken into.

"Now, we know they were outside the mailboxes. We know that they were breaking in, but where is the mail? If you look on the floor there you can kind of see junk mail. But look in the boxes. Empty, empty, empty, empty. The boxes were empty. All that was left was that. So looking at that you know that there was some mail in the box because there couldn't have just been all junk mail.

"But where is the rest of the mail? Where is it? Because we know that when they came to the vehicle 45 minutes later there was no mail in their

hands. They did not have any mail in their possession. What happened to the mail? Well, all we know is that it's gone; that it should be there and it's gone. The only two people that know what happened to that mail are Mr. Sheets and [defendant]. But somewhere in that [apartment] complex, who knows, in a garbage can, in [a] bush, in some puddle, who knows, but that mail was ditched. They got rid of it because there is no reason why the mail is gone and it was never found. It was never accounted for. It's gone because they took it. *That is petty theft of mail.*" (Italics added.)

The prosecutor then continued; as follows: "*But also there is more mail here, the one—the mail that was found actually in the car.* That mail was stolen because why else would they have all that mail? Why would they have it in their possession? How did he get it? Does it make any sense for anyone to just give them the mail? You heard from a witness Andres Alvarado, [']They have no reason to have my mail.['] *They got the mail the same way out of those mailboxes; they stole it.*" (Italics added.)

Moreover, when the prosecutor was arguing about the evidence of receiving stolen property, he twice argued that both defendant and Sheets were in possession of the mail in the stolen car and that "[t]hey stole that mail."

■ As set forth, the evidence supported more than one discrete crime of theft and the prosecution not only failed to elect among the crimes, but actually argued both to the jury. Accordingly, the trial court was required to instruct the jury sua sponte that it must unanimously agree on the criminal conduct supporting the conviction.

The failure to give a unanimity instruction may be harmless error if we can conclude beyond a reasonable doubt that all jurors must have unanimously agreed on the act(s) constituting the offense. (*People v. Deletto, supra,* 147 Cal.App.3d at p. 472; accord, *People v. Wolfe* (2003) 114 Cal.App.4th 177, 186–188 [7 Cal.Rptr.3d 483].)

We cannot say beyond a reasonable doubt that the jury agreed on the act(s) constituting theft. There was no direct evidence that defendants had stolen the mail found in the car. And mail stolen from the apartment complex was never found. A jury could easily divide on which scenario constituted the crime of theft.

The question is much closer with respect to the crime of receiving stolen property. While the prosecutor's argument to the jury on this charge focused on the "approximately around 260 pieces" of stolen mail found in the stolen car and defendant was not caught in possession of the mail stolen from the apartment, the jury specifically expressed its confusion on the subject.

Thus, during deliberations, the jury sent the following inquiry, described as, "Request No. 4," to the court: "In Count # 1 [receiving stolen property], Re mail, Do we consider only mail found in the car or mail in the car and mail missing from the mailboxes at the apartment where the arrest was made[?]" The record reflects that, after consulting with counsel, the trial court sent back the following response: "In response to Question No. 4: You consider all mail."

In light of this instruction, we cannot say that the jury must have unanimously found that defendant Norman received the stolen mail in the car. Defendant maintained at trial that Sheets was the mail thief and defendant did not share Sheets's criminal intent. The keys to the car were found in Sheets's possession. Sheets had stolen credit cards in his wallet, and defendant did not. Defendant proffered a colorable defense. Thus, unanimity was not assured on either the theft or the receiving stolen property charge. Accordingly, the judgment must be reversed.

Because we reverse the judgment based on the court's failure to give a unanimity instruction, we do not reach defendant's final contention that he could not be convicted of stealing and receiving the same property.

### III

### Advice to Trial Judges

As we have said, the failure to give a jury unanimity instruction (now CALCRIM No. 3500) is the most common kind of instructional error in criminal cases. There may be good reason *not* to give a unanimity instruction, for example, where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed. (See *People v. Russo, supra,* 25 Cal.4th at pp. 1132–1133.)

A most helpful discussion of the requirements for giving a unanimity instruction is found in a publication of the Administrative Office of the Courts, Education Division, Center for Judicial Education and Research: CJER Mandatory Criminal Jury Instructions Handbook (CJER 2007) sections 3.6 through 3.13.

So we have this advice for trial judges: in a criminal case, put CALCRIM No. 3500 on your list of standard instructions to give, then ask yourself: "Is there some reason *not* to give this instruction in this case?"

## DISPOSITION

The judgment is reversed.

Hull, J., and Butz, J., concurred.