Filed 12/9/13  P. v. Alexander CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055128 |
| v. | (Super.Ct.Nos. RIF10000212 & RIF10000102) |
| LINDA ALEXANDER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Richard J. Hanscom, Judge.  (Retired judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed; remanded for resentencing with directions.

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Linda Alexander appeals her conviction on three counts of forgery and other offenses.  We find no error requiring reversal of the conviction.  We do conclude, however, that remand for resentencing is required.

PROCEDURAL HISTORY

An amended information charged defendant with forgery (counts 1, 3, 4; Pen. Code,[1] § 470, subd. (d)); burglary (count 2; Pen. Code, § 459); possession of cocaine base (count 5; Health & Saf. Code, § 11350, subd. (a)); possession of hydrocodone (count 6; Health & Saf. Code, § 11377, subd. (a)); possession of stolen property (count 7; Pen. Code, § 496, subd. (a)); and misdemeanor possession of paraphernalia for injecting and smoking a controlled substance (count 8; Health & Saf. Code, § 11364).  The amended information also alleged four prior prison terms, within the meaning of Penal Code section 667.5, subdivision (b) and three strike priors within the meaning of Penal Code sections 667, subdivisions (c) and (e)(2)(A) and 1170.12, subdivision (c)(2)(A).

A jury convicted defendant on all counts except count 6.  In a bifurcated proceeding, the court found all of the prior conviction and prior prison term allegations true.

The court sentenced defendant to consecutive terms of 25 years to life on all six felony counts and to a six-month concurrent term on count 8.  The court struck the prior prison term enhancement.  Defendant filed a timely notice of appeal.

---

[1]  All statutory citations refer to the Penal Code unless another code is specified.

FACTS

*Count 1*

On November 27, 2009, Robert Dillard learned that funds were missing from his checking account. At the bank, he was shown checks 1036 and 1037 drawn on his account. Check 1037 was made payable to defendant. Dillard had not written a check to defendant and he did not authorize anyone to use that check.

Dillard had met defendant a few weeks earlier, when defendant was panhandling in front of the senior citizen complex where Dillard lived. Dillard offered to give her seven or eight dollars in change. He went into his apartment to get the money, then realized that she was right behind him when he got to his door. He invited her inside and went into the bedroom to get the change. He had been paying bills, and his checkbook was on the dining room table. Defendant was standing by the table when Dillard went into the bedroom, and she was still standing there when he came out. He gave her the change, and she thanked him and left. When he learned that check 1037 had been paid to defendant, he told police about the panhandling incident.

In December 2009, Dillard saw defendant again near a Carl's Jr. restaurant in his neighborhood. She admitted that she had taken his check and cashed it. She apologized to him and said she would return his money.

A questioned document examiner testified that Dillard probably did not sign the checks and that his checks could have been written and/or endorsed by defendant.

3

*Count 2*

On November 5, 2009, defendant entered Continental Currency Services and cashed Dillard's check 1037 for $100.

*Counts 3 through 8*

In August 2009, Soledad Castro Fernandez[2] was the owner of Hard Stone Granite and Marble. She was the only authorized signer on the business checking account. On August 27, 2009, she learned that three checks drawn on her account had been cashed, leaving her with insufficient funds to cover a check she had written. Her checks 1553 and 1558 had been written to Linda Alexander and were signed by John Stone. Check 1556 was written to Alejandra Ramirez and was signed by John Stone. Castro had not written any of these checks and did not know Linda Alexander, Alejandra Ramirez or John Stone. Castro reported the check fraud to her bank. After making the report, she tried to find her checkbook. She realized that the last time she had seen it, it was in her boyfriend's truck, which she had been using. The truck had a broken window, allowing access from outside.

A questioned document examiner testified that Castro's forged checks could have been written and/or endorsed by defendant.

On September 26, 2009, Castro's missing checkbook was found in a motel room occupied by defendant and Erick Barrera. Police had been dispatched to the motel room in response to a report concerning violence and illegal drug activity going on in their room. Defendant allowed police to enter the room and to search it. In a dresser drawer

---

[2] The witness is referred to in the transcript by the name Castro.

4

which contained women's clothing,[3] police found the Hard Stone Granite and Marble checkbook containing duplicates of checks 1553 and 1558, a California driver's license in the name of Gloria Ramirez, and a Golden State Advantage (EBT) card in the name of Juana Zavala. Two purses were also found in the room. Inside one of the purses, police found a cigarette box containing some pills later determined to be hydrocodone. Under the mattress, police found Barrera's pants, an ashtray containing what was later determined to be approximately 0.08 grams of cocaine base and a glass pipe commonly used for smoking cocaine. A second glass pipe was found between the bed and the wall. Both pipes were coated with a white substance and contained pieces of Brillo pads, which are commonly used to keep cocaine in place while it is smoked.

DISCUSSION

1.

DEFENDANT WAS NOT CONVICTED OF STEALING AND POSSESSING

THE SAME ITEMS

Defendant contends that her conviction for possession of stolen property in count 7 must be reversed because she was also convicted of forging the Hard Stone Granite and Marble checks which, she contends, were the only items proven to be stolen property which were in her possession.

---

[3] Defendant admitted that the clothing and the purses were hers. She gave permission to search the purses. The purse which did not contain contraband was alleged to have been stolen.

Defendant is correct that a person may not be convicted both of stealing property and being in possession of the same stolen property. (§ 496, subd. (a); *People v. Jaramillo* (1976) 16 Cal.3d 752, 759.) She contends that because forgery is a theft offense, she cannot be convicted both of forging the Hard Stone Granite and Marble checks and possessing them. The Attorney General responds that forgery is not a theft offense. We need not decide this issue, however, because count 7 is not based on defendant's possession of the checks she forged. The forged checks were not in defendant's possession on September 26, 2009; they had been cashed in August 2009, and were in possession of Castro's bank. Only carbon copies of those checks were in the checkbook. The information alleged in count 7 that on September 26, 2009, defendant possessed "a purse, drivers license and checks" obtained by theft. Castro's checkbook was found in defendant's possession. We presume that it contained unused checks along with the carbon copies of the forged checks. The evidence supports the inference that the checkbook had been stolen from Castro's boyfriend's vehicle and that checks from that checkbook were forged by defendant. This evidence supports the further inference that defendant possessed Castro's checkbook knowing it was stolen. (§ 496, subd. (a).) Accordingly, defendant's contention fails.[4]

---

[4] Defendant implies, in passing, that a unanimity instruction should have been given with respect to count 7. The omission of a unanimity instruction is harmless if a reviewing court can conclude beyond a reasonable doubt that all jurors must have unanimously agreed on the act or acts constituting the offense. (*People v. Norman* (2007) 157 Cal.App.4th 460, 466.) Based on the evidence, we conclude beyond a reasonable doubt that the jurors agreed unanimously that the checkbook was stolen. And, because we so conclude, we do not need to address defendant's contention that there is insufficient evidence to prove that the driver's license or the purse was stolen.

2.

SECTION 654

Defendant contends that section 654 precludes imposition of unstayed sentences on counts 2 and 7.

Section 654, subdivision (a), provides, in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

"The test for determining whether section 654 prohibits multiple punishment has long been established: 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor.'" (*People v. Britt* (2004) 32 Cal.4th 944, 951-952.) "It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible. [Citations.] We have traditionally observed that if all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once. [Citation.] [¶] If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

7

The defendant's intent and objective are factual questions for the trial court. (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 268.)  When a trial court sentences a defendant for two crimes, without suspending execution of sentence, the court implicitly finds the acts involved more than one objective.  (*People v. Osband* (1996) 13 Cal.4th 622, 730.)  The court's findings, express or implied, are subject to the substantial evidence standard of review.  The appellate court reviews the trial court's determination in the light most favorable to the judgment and presumes the existence of every fact the trial court could reasonably deduce from the evidence.  (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

*Count 2*

The forgery of Robert Dillard's check is the subject of count 1.  In count 2, defendant was convicted of the burglary of Continental Currency Services, based on the evidence that she entered the establishment with the intent of cashing Dillard's forged check.[5]  Defendant contends that section 654 precludes imposition of sentence on both counts 1 and 2 because the two crimes were the means of accomplishing the single objective of obtaining money by passing the forged check.

---

[5] The burglary was not, as the Attorney General states, entry into Dillard's apartment to steal the check.

8

*People v. Curtin* (1994) 22 Cal.App.4th 528 (*Curtin*) supports defendant's position. In that case, the defendant entered a bank, presented a forged check and false identification, and cashed the check. (*Id*. at p. 530.) The defendant was convicted of forgery, grand theft, and burglary "all arising out of a single incident in which he cashed a check at a bank by misrepresenting himself as one of the bank's depositors and using a forged signature." (*Ibid.*) The defendant was sentenced to two years for burglary, a two-year concurrent term for forgery, and two years for theft. The trial court stayed only the theft sentence under section 654. (*Curtin*, at p. 530.) On appeal, the defendant argued that the forgery sentence should also be stayed, leaving punishment only for the burglary. The appellate court found it was appropriate to stay the defendant's conviction for forgery under section 654, because in that case the forgery and burglary were "part of the same indivisible transaction" and were "committed for a single criminal objective, to cash the check." (*Curtin*, at p. 532.)

This analysis applies under both of the two possible bases for the conviction in count 1. Pursuant to section 470, subdivision (d), both "falsely mak[ing]" a check and uttering or passing a forged check constitute forgery.[6] In this case the jury was instructed on both theories, i.e., that defendant forged the check by signing Dillard's name on it and that she passed or attempted to use the forged check. The jury was also instructed that all jurors must agree that defendant committed forgery under at least one theory, but that

---

[6] Section 470, subdivision (d), provides in pertinent part: "Every person who, with the intent to defraud, falsely makes, alters, forges, or counterfeits [or] utters, publishes, passes or attempts or offers to pass, as true and genuine, any of the following items, knowing the same to be false, altered, forged, or counterfeited, is guilty of forgery: any check . . . ."

9

they did not have to agree on the same theory. Consequently, it is possible that some jurors concluded that the crime in count 1 was signing the check as opposed to passing it. Under that scenario, too, section 654 bars imposition of sentence on both count 1 and count 2, because, although there was perhaps some lapse of time between the act of forging the check and the burglary, both offenses were merely incidental to or the means of accomplishing one objective, i.e., obtaining money with the forged check. (*People v. Harrison*, *supra*, 48 Cal.3d at p. 335.)

*Count 7*

Defendant also contends that section 654 bars imposition of an unstayed sentence on count 7, for receiving stolen property. She states that the conviction in count 7 is based on her possession of the carbon copies of Hard Stone Granite and Marble checks 1553 and 1558, which were the subjects of counts 3 and 4, for forgery. As we discussed above, the evidence showed that defendant possessed the entire checkbook which contained the carbon copies of checks 1553 and 1558. Her possession of the entire checkbook is substantial evidence which supports the implied finding that defendant intended to commit additional acts of forgery. Because each act of forgery has a separate criminal objective (see *People v. Neder* (1971) 16 Cal.App.3d 846, 853-854), section 654 does not preclude a separate sentence for possession of the stolen checkbook.

10

3.

## RESENTENCING IS REQUIRED

Defendant filed a motion prior to sentencing, asking the court to exercise its discretion pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 and strike her strike priors. The court denied the motion, finding that because of defendant's extensive record and failure to seek help for her long-term drug addiction, she could not be deemed "outside the . . . spirit of the [three strikes law]." (See *People v. Williams* (1998) 17 Cal.4th 148, 161.) Defendant now contends that we must vacate her sentence and remand the cause for resentencing because the court did not understand that it had the discretion to strike her prior convictions as to some counts while refusing to strike them as to other counts. Defendant did not ask the trial court to exercise its discretion in that manner, however, and we decline to find that it was an abuse of discretion for the court not to do something it was not asked to do and which it had no legal obligation to do in the absence of a request. For the same reason, we reject defendant's contention that the court should have reduced some of her felony convictions to misdemeanors, pursuant to section 17, subdivision (b).

Under the same caption, defendant argues that remand for resentencing is also required because the trial court appeared to believe that the terms on all counts must be imposed consecutively. Defendant is correct that trial courts retain the discretion, under the three strikes law, to impose concurrent terms for crimes committed on the same occasion or arising from the same set of operative facts (where § 654 does not mandate staying the sentence on one or more of such offenses). (*People v. Deloza* (1998) 18

11

Cal.4th 585, 590-591, 595; *People v. Lawrence* (2000) 24 Cal.4th 219, 229-230, 233.)

Here, the court stated that the sentence on count 2 was required to be consecutive to the sentence on count 1, and "[s]ame for Count 3" and "[s]ame for Count 4." We will remand for resentencing to allow the court to determine whether the sentences on some counts should be made concurrent.

In a supplemental brief, defendant also contends that she is entitled to be sentenced as a second striker, pursuant to the Three Strikes Reform Act of 2012. (§§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C), 1170.126.)

The Three Strikes Reform Act of 2012 (hereafter the Reform Act) was enacted by the electorate on November 6, 2012, and became effective November 7, 2012. (*People v. Lester* (2013) 220 Cal.App.4th 291, 300 [Fourth Dist., Div. Two].) Under the three strikes law as it existed before the passage of the Reform Act, all defendants with two or more strike priors received a sentence of 25 years to life upon conviction of any new felony. (Former § 667(e)(2)(A).)[7]

As amended, section 667 provides that a defendant who has two or more strike priors is to be sentenced pursuant to paragraph 1 of section 667(e)—i.e., as though the defendant had only one strike prior—if the current offense is not a serious or violent

---

[7] For convenience, we will dispense with the use of "subdivision" in referring to statutes. We will also refer solely to section 667(e) in discussing the Reform Act, omitting reference to the substantially identical section 1170.12(c). However, the analysis applies to both section 667 and section 1170.12.

12

felony as defined in section 667.5(c) or section 1192.7(c), unless certain disqualifying

factors are pleaded and proven.[8] (§§ 667(d)(1), (e)(2)(C).)

_____

[8] Section 667(e)(2)(C) provides that second-strike sentencing does not apply if the prosecution pleads and proves any of the following:

"(i) The current offense is a controlled substance charge, in which an allegation under Section 11370.4 or 11379.8 of the Health and Safety Code was admitted or found true.

"(ii) The current offense is a felony sex offense, defined in subdivision (d) of Section 261.5 or Section 262, or any felony offense that results in mandatory registration as a sex offender pursuant to subdivision (c) of Section 290 except for violations of Sections 266 and 285, paragraph (1) of subdivision (b) and subdivision (e) of Section 286, paragraph (1) of subdivision (b) and subdivision (e) of Section 288a, Section 311.11, and Section 314.

"(iii) During the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person.

"(iv) The defendant suffered a prior serious and/or violent felony conviction, as defined in subdivision (d) of this section, for any of the following felonies:

"(I) A 'sexually violent offense' as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code.

"(II) Oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than he or she as defined by Section 288a, sodomy with another person who is under 14 years of age and more than 10 years younger than he or she as defined by Section 286, or sexual penetration with another person who is under 14 years of age, and who is more than 10 years younger than he or she, as defined by Section 289.

"(III) A lewd or lascivious act involving a child under 14 years of age, in violation of Section 288.

"(IV) Any homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive.

"(V) Solicitation to commit murder as defined in Section 653f.

"(VI) Assault with a machine gun on a peace officer or firefighter, as defined in paragraph (3) of subdivision (d) of Section 245.

"(VII) Possession of a weapon of mass destruction, as defined in paragraph (1) of subdivision (a) of Section 11418.

"(VIII) Any serious and/or violent felony offense punishable in California by life imprisonment or death."

The intermediate courts have disagreed as to whether the mandatory second-strike sentencing provisions of the Reform Act apply to all qualifying third-strike convictions which were not yet final on November 7, 2012. Some courts, including a panel of this court in *People v. Lester*, *supra*, 220 Cal.App.4th 291, have held that section 1170.126 reflects the intent of the electorate to apply the mandatory second-strike sentencing provisions of section 667(e) prospectively only. Section 1170.126 provides that any inmate who is currently serving an indeterminate life term under the three strikes law is entitled to apply to the sentencing court for recall of his or her sentence and for a sentence reduction. Under section 1170.126, reduction of the inmate's sentence is discretionary. Section 1170.126 states, "The resentencing provisions under this section and related statutes are intended to apply exclusively to persons presently serving an indeterminate term of imprisonment pursuant to paragraph (2) of subdivision (e) of Section 667 . . . whose sentences under this act would not have been an indeterminate life sentence." In *Lester*, the court held that this language is the functional equivalent of a savings clause, reflecting the intent that the mandatory sentencing provisions apply only to those defendants who are convicted after the effective date of the Three Strikes Reform Act. (*People v. Lester*, at pp. 300-304.)

The issue is currently on review in *People v. Lewis* (2013) 216 Cal.App.4th 468 (Fourth Dist., Div. Two) (review granted Aug. 14, 2013, S211494) and other cases. For purposes of this case, we adopt the reasoning and holding of *People v. Lester*, *supra*, 220 Cal.App.4th at pages 300-304.

## DISPOSITION

The cause is remanded to the trial court for further sentencing proceedings. The trial court is directed to stay imposition of sentence on count 2, pursuant to Penal Code section 654, and to exercise its discretion to determine whether each remaining felony term is to run consecutive to the principal term or concurrent with it. The judgment is otherwise affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:


RICHLI
J.


MILLER
J.

15