Filed 12/17/15  P. v. Stampley CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KYLE IVAN STAMPLEY,<br><br>    Defendant and Appellant. | D067024<br><br><br><br>(Super. Ct. No. SCD269360) |

APPEAL from a judgment of the Superior Court of San Diego County, Dwayne K. Moring, Judge.  Affirmed.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Daniel Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Kyle Ivan Stampley of resisting an executive officer in the performance of his duties (Pen. Code,[1] § 69), but acquitted him of battery on a peace officer with injury (§ 243, subd. (c)(2)). Stampley waived a jury trial and admitted he had served a prior prison term (§§ 667.5, subd. (b), 668) and had a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12 and 668). The trial court sentenced Stampley to 32 months in state prison (the low term of 16 months, doubled), and struck the prior prison term finding.

Stampley contends the court prejudicially erred by denying his motion for new trial on grounds the court had not instructed the jury sua sponte that unanimity was required as to the act in order to prove a violation of section 69. He maintains the error was prejudicial because the prosecutor had argued that several different acts were attempts to deter and resist an executive officer with threats or violence, and some jurors could have had a reasonable doubt as to one of the alleged acts and others could have had a reasonable doubt as to different acts. Stampley argues the court's failure to give a unanimity instruction cannot be harmless because the jury rejected the prosecutor's contention that he committed a battery based on acts the prosecutor also described were threats of violence for purposes of section 69. Finally, Stampley contends that if we find no sua sponte duty to give a unanimity instruction, his counsel was prejudicially ineffective for not requesting one. We affirm the judgment.

---

[1]     Statutory references are to the Penal Code unless otherwise specified.

2

FACTUAL AND PROCEDURAL BACKGROUND

On the evening of December 13, 2013, Corporal Francis Gardiner, a Deputy Sheriff with the San Diego County Sheriff's Department, was delivering commissary packages to inmates at the George Bailey Detention Facility (facility), where Stampley was housed as an inmate. Corporal Gardiner was assisting facility staff member Jerry Bunnell. Corporal Gardiner was placing bags in front of each cell and Bunnell was scanning wristbands to verify the inmate's identity and connect him with the package. Because they were rushing, the corporal dropped a bag down a few feet from Stampley's cell, then heard yelling coming from the cell. Corporal Gardiner returned to Stampley's cell, and Stampley complained that the corporal had intentionally broken his eyeglasses. Bunnell told Stampley he would check the bag and exchange the glasses that night if they were broken, and Stampley calmed down. Bunnell attempted to scan Stampley's wristband several times, but it displayed an error, so he told Stampley he could not issue the commissary but would return. Stampley complained that the corporal was "messing" with him and his family's money, and was getting back at him for saying his glasses were broken. Because Stampley was boisterous and yelling, Corporal Gardiner chose for safety reasons to close his cell door. They completed the commissary delivery while Stampley continued to yell.

Once commissary was completed, Corporal Gardiner began assisting with laundry exchange, during which inmates were given an opportunity to exchange their dirty laundry for fresh clothing and bedding. The laundry exchange was considered a high risk operation that entailed opening each cell door; managing the inmate workers handling the

3

laundry; and searching the clean laundry, the inmates receiving it, and their cells for contraband. When Stampley's cell was opened, Stampley came toward Corporal Gardiner with what the deputy saw was a piece of paper—an inmate grievance form—in his hand, again complaining about the deputy. Stampley was loud and agitated, swinging the paper around, and demanding that the deputy sign the form immediately. Corporal Gardiner was concerned that Stampley might agitate the other inmates, and he was also concerned for his own safety due to the presence of Stampley as well as the other inmates. The corporal told Stampley that commissary would likely return, but if they did not resolve the matter by the end of the night, he would sign the grievance form and handle it. Stampley was still boisterous and demanding that Corporal Gardiner sign the form. The corporal told him that he needed to do laundry exchange and Stampley should head back to his cell. When Stampley replied that he was not going to lock down, Corporal Gardiner told him to exit the module and go to the recreation yard. Stampley did not comply; he told the corporal he was going to his cell and getting his property.

Stampley entered his cell, grabbed his property bag and began to exit the module. Corporal Gardiner followed him, as did three other deputies. Once Corporal Gardiner and Stampley got to the threshold of the recreation yard, Corporal Gardiner instructed Stampley to put his bag outside the door, as it was not allowed in the yard. Stampley did not comply, but walked into the center of the yard with his bag and did not respond when the corporal told him to bring it back and put it outside the door. Corporal Gardiner approached Stampley and grabbed his property bag. Stampley spun around "pretty aggressively" and stood face to face with the corporal, in a fighting stance, with his arm

4

back and his fist clenched. Corporal Gardiner attempted to grab Stampley's head to bring him towards the ground, but according to the corporal, Stampley, who is six foot six inches tall, put both of his hands on the corporal's chest and shoved him. Corporal Gardiner lost his footing and fell backwards on his left hand, sustaining a fracture. He heard other deputies telling Stampley to stop resisting and continually instructing him to put his hands behind his back.

Deputy Sheriff Roland Garza had been following Corporal Gardiner into the recreation yard from about 10 to 12 feet behind. He watched Corporal Gardiner try to grab Stampley's property bag, and Stampley face the corporal and take a fighting stance. According to Deputy Garza, Stampley was able to evade the takedown by moving to his right and Corporal Gardiner went to the ground; the deputy did not recall seeing a push. Deputy Garza eventually got Stampley to the ground and held him, while Stampley flailed his arms and continued to resist even after a second deputy climbed on top of him in an effort to secure him. Stampley was eventually secured with handcuffs, leg chains and a spit guard.

The People charged Stampley with resisting an executive officer, alleging in count 1 that Stampley "did unlawfully attempt by means of threats and violence to deter and prevent another who was then and there an executive officer from performing a duty imposed upon such officer by law, and did knowingly resist by the use of force and violence said executive officer in the performance of his/her duty . . . ." The People also charged Stampley with battery, alleging in count 2 that Stampley "did unlawfully use force and violence and inflict an injury upon the peace officer, when the defendant knew

5

and reasonably should have known that said person was a peace officer engaged in the performance of his/her duties . . . ."

During closing argument, the prosecutor explained that Stampley's actions in disobeying Corporal Gardiner's commands, then taking the fighting stance in the recreation yard, proved the intent and threat elements of the alleged offense:  "The People only have to prove two elements of [resisting an executive officer].  'When the defendant acted, he intended to deter the executive officer from performing that officer's duty.'  So, the defendant used force or threat of violence, and the officer—the defendant intended to stop the officer from doing what the officer was supposed to do.  [¶]  And in this case, what was Corporal Gardiner supposed to do?  . . .  Corporal Gardiner's job and his duties—and the instructions later go on to lay out what his job duties were.  That is to maintain order at this facility.  . . .  [¶]  . . .  We know that in this day room . . . the defendant approached Corporal Gardiner.  . . .  He was holding the grievance [form] and demanding that Corporal Gardiner sign the grievance.  [¶]  . . .  [¶]  . . .  The defendant was trying to pick a fight.  He was angry over not getting that commissary.  He wanted that bag.  He wanted his glasses and whatever else was in it.  . . .  So he didn't follow the rules, didn't follow procedure.  He went out of line, and he approached the corporal in the day room."

The prosecutor continued:  "And then what did Corporal Gardiner do?  Corporal Gardiner ordered the defendant to the [recreation] yard.  . . .  [¶]  But what does the defendant do?  . . .  The defendant actually walked towards the day room door, but then turned around.  He again disobeyed a command; he disobeyed an order.  He went back

6

and got his property.  And after he got his property, he then finally began to head to that [recreation] yard.  [¶]  Why is that important? . . .  He wasn't going to listen to the corporal; he wasn't going to do what the corporal said, and he was angry and irate. . . . [¶] . . . [¶] . . . We then have a corporal telling him, 'Put your property down.'  The rules are, no property on the [recreation] yard, especially someone who is angry at the moment.  But the defendant wasn't going to listen. . . .  [Corporal] Gardiner said he told you [*sic*] three times, 'I told him to put it down.'  [¶]  The defendant turned around.  Both Corporal Gardiner and Deputy Garza told you, face-to-face. . . .  Deputy Garza told you the defendant raised his fist.  He got into a fighting stance.  And that, members of the jury, goes to number two.  That's a threat.  When he did that, at that moment, . . . even if there was no other conduct, that is enough to be a . . . section 69 violation, attempting to keep an officer from doing his duty."  The prosecutor also explained to the jury that the battery was committed when Stampley put his hands on Corporal Gardiner's chest and pushed him.

The prosecutor summarized as to count 1:  "So, members of the jury, if you think the defendant willfully, unlawfully used violence or a threat of violence—so even if you find that the push, there was no push—which the People believe, and the evidence is clear, there was a push. . . .  If that's a push, that's force.  But also, even if you don't believe that, getting in a fighting stance with your fist up is a threat of force.  It's a course of conduct that you can find is enough that the defendant was trying to prevent the corporal from doing his duty. . . .  [¶]  That element met, that just leaves you, 'When the defendant acted, he intended to deter the officer from performing the officer's lawful

7

duties.' . . . The defendant was not going to listen to someone he was mad at. He wasn't going to listen to this deputy, and he was disobeying. The first disobeying came when he continued to yell and holler in the day room. Second is on the video, when the defendant walks towards the [recreation] yard after being told to go to the [recreation] yard, he walks back. That's another disobeyment, disobeying of a command. Then, finally, he grabs his property, he wasn't supposed to have the property, and he tried to go back to the [recreation] yard. [¶] Each time, the defendant is attempting to deter the officer, and he finally does that by using the threat of force and force."

Defense counsel's theory in closing was that because Deputy Garza testified he did not hear Corporal Gardiner's command to Stampley to put his bag down, there was a reasonable doubt as to whether the corporal gave an order for Stampley to disobey. He also argued that Stampley's position in the recreation yard was not threatening, but rather was a hand movement indicating that Stampley did not want the corporal to touch him: " 'Don't touch me; what are you doing?' There's no threat of violence or violence in that." He argued, "Moving your hand away when somebody is grabbing at you is not violence or threat of violence. . . . If somebody aggressively jumped at you, you would reflexively jump back. And that is all Mr. Stampley did. There is no violence or threat of violence in that at all." He argued the jury should discount Corporal Gardiner's credibility as he was being complained against and was "being told over and over and over again by Mr. Stampley, 'You're not treating me right. I just want to be treated fairly.' " Defense counsel argued that Corporal Gardiner fell because, as Deputy Garza testified, Stampley moved out of the way.

The jury returned verdicts of guilty on count 1 and not guilty on the count 2 battery. Stampley thereafter moved for a new trial on grounds the trial court had misdirected the jury by failing to give a unanimity instruction. In part, he argued the continuous course of conduct exception did not apply as there were separate and distinct acts supporting the section 69 offense, and he offered different defenses as to each act: that the act of raising his fists after Corporal Gardiner grabbed at his bag was reflexive and not threatening, and the push did not happen. The People opposed the motion, arguing Stampley's actions constituted a continuous course of conduct, eliminating any requirement for a unanimity instruction. The trial court denied the motion, ruling that the "case law does support the continuous course of conduct scenario, essentially, where several acts can constitute the crime. [¶] If the acts are committed close in time, in the same proximity—physical proximity and involving the same witnesses or victims, that further supports finding that it can be considered a continuous course of conduct by the defendant. [¶] I do find that the case law supports the People's position."

DISCUSSION

I. *Standard of Review*

" '[A]ssertions of instructional error are reviewed de novo.' [Citation.] Whether or not the trial court should have given a 'particular instruction in any particular case entails the resolution of a mixed question of law and fact,' which is 'predominantly legal.' [Citation.] As such, it should be examined without deference." (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 568.)

9

## II. *Legal Principles*

"As a general rule, when violation of a criminal statute is charged and the evidence establishes several acts, any one of which could constitute the crime charged, either the state must select the particular act upon which it relied for the allegation of the information, or the jury must be instructed that it must agree unanimously upon which act to base a verdict of guilty." (*People v. Jennings* (2010) 50 Cal.4th 616, 679 (*Jennings* ), declined to follow on other grounds in *Burrage v. U.S.* (2014) ___ U.S. ___ [134 S.Ct. 881, 890-891].) "On the other hand, where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) "This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' " (*Ibid.*)

"There . . . is no need for a unanimity instruction if the defendant offers the same defense or defenses to the various acts constituting the charged crime." (*Jennings*, *supra*, 50 Cal.4th at p. 679.) There is also no need for a unanimity instruction if the case falls within the so called "continuous-course-of-conduct exception." (*Ibid.*; *People v. Williams* (2013) 56 Cal.4th 630, 682.) This exception arises " ' "when the acts alleged are so closely connected as to form part of one transaction" ' " (*Williams*, at p. 682) or when there is " 'a continuous course of conduct of a series of acts over a period of time.' " (*Jennings*, at p. 679.) In *Williams*, the court explained that more specifically, the course

10

of conduct exception requires that " 'the defendant offer[] essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them.' " (*Williams*, at p. 682; see also *People v. Lueth* (2012) 206 Cal.App.4th 189, 196 [exception is " ' " 'meant to apply not to all crimes occurring during a single transaction but only to those "where the acts testified to are so closely related in time and place that the jurors reasonably must either accept or reject the victim's testimony in toto" ' " ' "].)

"In deciding whether to give the instruction, the trial court must ask whether (1) there is a risk the jury may divide on *two discrete crimes* and not agree on any particular crime, or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a *single discrete crime*. [Citation.] In the first situation, but not the second, it should give the unanimity instruction." (*People v. Hernandez*, *supra*, 217 Cal.App.4th at p. 570.) A unanimity instruction must be given sua sponte, even in the absence of a defense request for the instruction. (*Id*. at p. 569; *People v. Leonard* (2014) 228 Cal.App.4th 465, 491.)

III. *Stampley's Actions Were Closely Related in Time and Place as to Form One Transaction and One Offense*

Stampley contends the court was required to give a unanimity instruction because the prosecutor argued that there were different acts directed toward Corporal Gardiner on which the conviction could have been based, in the dayroom and outside in the recreation yard, one of which constituted both deterring and battery. He maintains the circumstances are like *People v. Hernandez*, *supra*, 217 Cal.App.4th 559, which involved crimes of gun and ammunition possession as to which "reasonable jurors could have

11

divided on which instance of possession they used to convict defendant of the charged offenses." (*Id*. at p. 571.) He also compares the circumstances to *People v. Norman* (2007) 157 Cal.App.4th 460, in which there were multiple discrete acts of receiving stolen property. (*Id*. at p. 466.)

We conclude on this record that the trial court did not err by failing to give a unanimity instruction. First, the prosecutor in closing arguments plainly elected only the actions against Corporal Gardiner as the basis for prosecution, and—at least with respect to the other deputies involved—there was no possibility for jurors to disagree about the factual basis for prosecution.[2] Second, Stampley's conduct with regard to Corporal Gardiner was so closely related in time and place as to constitute a continuous course of conduct, and one single transaction, countered by the same defense: that Stampley was merely demanding to be treated fairly and neither disobeyed any order, nor pushed and threatened Corporal Gardiner. Thus, Stampley simply denied the offenses occurred. " ' "Neither instruction nor election are required . . . if the case falls within the continuous course of conduct exception." ' " (*People v. Leonard*, *supra*, 228 Cal.App.4th at p. 491.)

---

[2] Thus, we reject Stampley's argument that his struggle against Deputy Garza and the other deputy who sought to hold him down could be seen as a separate and distinct action by the jury. As stated, the prosecutor made clear during closing argument that Stampley was not charged with resisting or deterring those deputies: "But remember this. The defendant is not charged with resisting Deputy Garza and Deputy Buswell. . . . The only excessive force that's relevant to this charge is Corporal Gardiner's actions, which were grabbing a bag, in a jail from an inmate." But even if that were not the case, Stampley's acts in resisting the other deputies' efforts to subdue him were nevertheless part of the same continuous transaction.

The fact that some of Stampley's conduct underlying the offense occurred in his cell, and other conduct occurred after he walked with Corporal Gardiner to the recreation yard, does not change this conclusion. The events occurred within a span of minutes on the same night, were directed against the same officer, and Stampley's actions were successive, interrelated, and aimed at the single objective of resisting Corporal Gardiner's efforts to restore order and deescalate the situation over Stampley's commissary bag.

The circumstances here are unlike in *People v. Norman*, *supra*, 157 Cal.App.4th 460, which involved two separate and distinct thefts: the theft of mail found in a stolen car (which included mail from various parts of Sacramento), and the theft of mail from a specific apartment complex. (*Id*. at p. 465.) Nor is it like *Hernandez*, *supra*, 217 Cal.App.4th 559, in which the prosecutor presented testimony of two separate instances of gun possession separated in time and space: an incident at the defendant's girlfriend's house where he was alleged to have fired a firearm, and an incident later in the evening in which police searching a car connected to the defendant found a fully loaded firearm hidden in the car's engine compartment. (*Id*. at pp. 563-566, 571.) Because the prosecutor never elected which act constituted possession of the firearm and ammunition (*id*. at p. 568), and the evidence disclosed two discrete acts of possession, a unanimity instruction was required. (*Id*. at p. 571.) And the appellate court rejected the prosecution's argument that a continuous transaction was involved. Because there was no evidence that the guns were the same, and the defendant's girlfriend equivocated on whether the defendant actually had a gun while at her house, the Court of Appeal held the jury could conclude the defendant did not have a gun at his girlfriend's house, or if he did,

13

it was not the same gun found in the car. (*Id.* at p. 574.) Thus, the record revealed "the possibility of two distinct possessions separated by time and space" (*ibid.*) as well as distinct defenses to each alleged possession: the defendant first argued he did not have a gun at his girlfriend's house, and then argued that the prosecution did not establish he had dominion and control over the gun found under the hood of the car. (*Ibid.*)

Rather, the circumstances here are more like those in *People v. Jefferson* (1954) 123 Cal.App.2d 219, in which the Court of Appeal held that the continuous conduct exception applied and an election by the prosecutor was not required in the case of a defendant who, using two different knives and in two different locations, slashed at police officers with one knife and then slashed at them with the other knife. The acts occurred within a period of 10 to 15 minutes and each was in response to the officers' attempts to disarm the defendant. The court described the assaults as "part of the same incident" and as a single "attack." (*Id.* at p. 221.) In part, the court reasoned: "Both of the matters relied on as being separate and distinct offenses, occurred in the course of a continuous effort on the part of the officers to disarm the appellant. They were a part of the same incident, and they could not reasonably be held to constitute two separate offenses, each complete in itself, and each of which would require a separate charge and a separate trial." (*Ibid.*; compare *People v. Moreno* (1973) 32 Cal.App.3d Supp. 1 [election or unanimity instruction required where two acts of resisting officers were temporally and spatially separate, as one occurred near a residence, after which the defendant calmed down and ceased his criminal activity, and the second incident occurred a half hour later and miles away at a jail in the presence of a different set of

14

witnesses (booking desk personnel)].)  Here, there was one continuous course of conduct involving Stampley and Corporal Gardiner; there were no distinguishing differences in time or location.  The fact the prosecution posited various acts upon which the jury could base its verdict does not obviate the fact that Stampley's actions were all part of a continuing effort to deter Corporal Gardiner's efforts to perform his duties.  Under these circumstances, the lack of a unanimity instruction was not error.

In sum, we reject Stampley's claim that the evidence shows a series of distinct criminal acts that precluded a finding of continuous conduct.  Because the trial court did not err, there is no need to consider Stampley's arguments regarding prejudice or ineffective assistance of counsel.

## DISPOSITION

The judgment is affirmed.


                                                                    O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


HALLER, J.