Filed 8/26/21  P. v. Perez CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B304078 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA120638) |
| v. | |
| ROBERT ALFONSO PEREZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mike Camacho, Judge.  Reversed in part and remanded.

Nicholas Seymour and Lillian Hamrick, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriguez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Robert Alfonso Perez went to Aileen Navalta's house twice in one morning. There was the 4:45 a.m. visit and then the 8:00 a.m. visit, both the same day. Each time, a witness saw Perez try to open Navalta's gate. A jury convicted Perez of several crimes. Perez attacks just one conviction, arguing we must reverse his attempted burglary conviction because the trial court failed to give a unanimity instruction. The prosecution concedes the error but argues it was harmless. Perez's contrary view is correct, so we reverse this one conviction. Statutory citations are to the Penal Code.

I

An amended information charged Perez with prowling (§ 647, subd. (h)), attempted first degree burglary (§§ 664 & 459), stalking (§ 646.9, subd. (a)), and two counts of carrying a dirk or dagger (§ 21310). The first four counts concerned events from March 29, 2019. The fifth count related to a separate incident on March 5, 2019. The amended information alleged Perez had one prior strike conviction that was a serious and/or violent felony conviction (§§ 667, subds. (a)(1) & (d), 1170.12, subd. (b).)

The trial testimony told this story.

Around 4:45 in the morning of March 29, 2019, Robert Lomeli, Navalta's next-door neighbor, saw Perez at Navalta's side yard fence. Perez was trying to open the gate. Lomeli yelled. Perez froze. Perez remained frozen while Lomeli called police.

Lomeli had seen Perez walking around over the past week. The day before the incident, he saw Perez standing across the street with suitcases, as if he were waiting for a ride. Lomeli had been a neighborhood resident for more than 30 years, basically knew everyone in the neighborhood, and knew Perez did not live there.

2

Officer Vanessa Pineda responded to Lomeli's 911 call. When she arrived, Perez was pacing back and forth in Navalta's driveway. Perez told the officer, "My friend lives here. My jacket fell over. I'm just trying to retrieve it." Pineda looked but found nothing; it was dark. She had had contact with Perez before, found his comments suspicious, and detained him until her partner arrived. Perez then changed his story and said he *had* his jacket. Pineda's partner took over the investigation.

Later that morning, Navalta found a black jacket on her property, inside the gate. In the jacket pockets she found a black beanie, mittens, and a knife, among other things. She did not see anyone on or near her property at that time.

Navalta went back in her home. Then her dog's barking told her someone was outside. Navalta saw Perez through her window walking back and forth and trying to open the knob to her gate. He tried to climb the gate; he put both hands on top and tried to lift his legs so "he could climb on the other side."

Navalta called the police, who arrived within minutes, around 8:00 a.m. Navalta had never seen Perez before. Her family did not know him.

Officer Danny Palma responded to Navalta's call. When he arrived, he saw Perez reaching over Navalta's gate, "as if he was trying to open it." Then Perez walked away. Palma stopped Perez, who said he had thrown his stuff into the backyard after noticing an attractive Asian woman inside. Perez told the officer he wanted to have sexual relations with this woman and wanted "to lick her asshole." He would use his jacket to "warm up the female." He kept talking about her beauty and again mentioned how badly he wanted "to lick her asshole." He said he hoped to

3

see her touching herself when he peered through her window. Palma arrested Perez.

Another officer testified about a separate incident on March 5, 2019. The officer found Perez on the porch of another home in the neighborhood. Perez had a knife in his pants pocket that was "locked in an open position."

Yet another officer testified about an uncharged incident in the area on March 20, 2019. Around 5:30 that morning, the officer responded to a report of three suspicious males at a house. When the officer arrived, Perez was the only one there. The officer searched him and found a beanie, a leather glove, a pair of pliers, and two screwdrivers in Perez's jacket. One of the screwdrivers had a bent tip. The officer arrested Perez.

Perez testified, claiming he worked around the corner from Navalta and was living nearby temporarily.

Regarding the incidents on March 5th and 20th, Perez testified he had the homeowners' permission to be on the properties and he used the knife for yard work. Perez conceded he pleaded guilty to possessing burglary tools for the incident on the 20th but denied he also pleaded guilty to prowling. The court took judicial notice of Perez's guilty plea to both charges.

As for March 29th, Perez testified he was on his way to work a little after 4:00 in the morning when he saw Navalta through her window and waved to her. She waved back and motioned for him to "come here." They started talking through the window. He remained on the sidewalk nearly 30 feet away. Perez claimed Navalta had let him keep two bags on her porch the day before, and he thanked her. He had never seen her before this.

4

Perez told Navalta she was very attractive and he was interested in seeing her, physically. She jumped to the topic of sex, and he mentioned oral sex. She asked him to wait for her by her truck while she grabbed a robe. So he waited, for about 10 minutes. Perez planned to give Navalta his jacket and placed it on the fence, but it fell. He never tried to open the gate. He saw a man inside the house and realized Navalta was involved with someone. The police came and eventually let him leave.

Perez testified he went to work and returned around 8:00 a.m. to get his jacket. He could not see it, so he knocked on the gate. He never reached over the gate. The police came, and Perez answered their questions. He never mentioned any specific sex acts. He told them he was waiting for a friend and his coat was there. Perez testified he used the items in the jacket for work.

The jury found Perez guilty on all counts. The court later found true the prior conviction allegations and sentenced Perez to nine years in state prison.

## II

Perez raises one claim on appeal.

He argues the prosecution presented evidence of two distinct events as the basis for attempted burglary, and so the court should have required the jurors to agree on the specific acts giving rise to their guilty verdict. Perez notes he offered different defenses for his two trips to Navalta's gate. The first time he was there for an outdoor consensual sexual encounter; the second time, he testified, he returned to get his jacket. Perez points out, as a logical matter, jurors impermissibly could have disagreed as to which incident constituted attempted burglary but could have

5

submerged their disagreement in a unanimous guilty verdict on the one attempted burglary count.

This argument is correct, as the prosecution concedes.

In criminal cases, the jury must agree unanimously the defendant is guilty of a specific crime. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 877.) When the evidence suggests more than one discrete crime and the prosecution fails to choose among them, the trial court must require the jury to agree on the same criminal act, even absent a defense request. (*Id.* at p. 878; *People v. Hernandez* (2013) 217 Cal.App.4th 559, 569 (*Hernandez*).) This way, the jury does not amalgamate evidence of multiple offenses, none of which the prosecution has proved beyond a reasonable doubt, to convict on the theory the defendant must have done something worthy of conviction. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) The proper remedy is a unanimity instruction, which eliminates the possibility of jurors convicting on one crime based on different actions. (*Hernandez*, at p. 569.)

This danger was real in this case. In closing argument, the prosecutor maintained Perez tried to break into Navalta's property twice and the jury could find attempted burglary based on his first trip to the house at 4:45 a.m. or his second trip at 8:00 a.m. Counsel did not request, and the court did not give, a unanimity instruction.

The prosecution concedes that this was error and that no exception to the unanimity rule applies. But it says the error is harmless, even under *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).

Appellate courts have divided over the standard for harmless error in a case like this. We follow the logic of

6

*Hernandez*, *supra*, 217 Cal.App.4th at pages 570, 576–577, and apply the *Chapman* standard.

Under this standard, Perez wins.  The prosecution failed to establish the conceded instructional error was harmless beyond a reasonable doubt.  (See *Sullivan v. Louisiana* (1993) 508 U.S. 275, 279–280 [the inquiry under *Chapman* "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error"]. )

Attempted burglary requires an intent to commit burglary.  (See § 21a.)  Burglary, in turn, requires entering a building or other defined space with the intent to commit a crime.  (See § 459.)  The court instructed the jury that the target crime here was oral copulation or forcible rape.

Much of Perez's testimony seems unbelievable.  But the jury could disbelieve Perez's defenses and his story in its entirety yet disagree as to when he had the requisite criminal intent and as to which of his acts constituted attempted burglary.  As a logical matter, the verdict did not establish whether the jury rejected Perez's credibility entirely or only in part, and, if in part, which part.

The testimony established a rational basis for distinguishing between Perez's two trips to Navalta's gate.  No one disputed, for instance, Perez's jacket was inside the gate when he returned to her home hours later.

It is possible some jurors concluded Perez had the requisite intent when he dropped his jacket—containing the items the prosecution characterized as a "rape kit"—over the gate around 4:45 a.m.  It is possible some concluded he had this intent only

7

when he returned at 8:00 a.m., as evidenced by his comments to police.  It also is possible some jurors believed Perez had the requisite intent during *both* trips, or matched his intent from one trip with his acts from the other trip.

We just do not know.  The *Chapman* standard means we find prejudice when we just do not know.

The prosecution incorrectly argues Perez's prowling and stalking convictions establish the instructional error was harmless beyond a reasonable doubt, because these other convictions show the jury unanimously rejected Perez's defenses and agreed he had the requisite intent at 4:45 a.m.  However, neither a prowling conviction nor a stalking conviction satisfies the intent required for an attempted burglary conviction.  We explain.

Prowling is insufficient.  For prowling, the court instructed jurors to return a guilty verdict if they found Perez had no lawful purpose for being on Navalta's property, he intended to commit "a crime" if the opportunity arose, and his purpose for being there was to commit such a crime.  The instruction neither identified burglary nor required the jurors to agree on any particular crime.  This conviction fails as support for the prosecution's no-prejudice argument.

Stalking is insufficient.  For stalking, the court instructed jurors to determine whether Perez had an intent to place another in reasonable fear for her safety and whether he "willfully and maliciously harassed or willfully, maliciously, and repeatedly followed" this person.  The instruction clarified "maliciously" as follows:  "Someone acts maliciously when he intentionally does a wrongful act or when he acts with the unlawful intent to disturb, annoy, or injure someone else."  Establishing stalking thus did

8

not establish an intent to commit burglary or any other felony. This conviction thus is not up to the task either.

Because we cannot say beyond a reasonable doubt the jury agreed on the criminal event constituting attempted burglary, this conviction cannot stand. (See *People v. Norman* (2007) 157 Cal.App.4th 460, 466–467; see also *People v. Davis* (2005) 36 Cal.4th 510, 561–562 [omission of unanimity instruction prejudicial where defendant offered two separate defenses to two separate takings, and the jury could have concluded he formed the intent to steal for the second taking after killing the victim].)

## DISPOSITION

We reverse Perez's conviction for attempted burglary and remand for further proceedings.


WILEY, J.


We concur:



GRIMES, Acting P. J.




OHTA, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9