Filed 3/30/21  P. v. Gomez-Garcia CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C084227 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F05320) |
| v. | |
| JOSE GOMEZ-GARCIA, | |
| Defendant and Appellant. | |

Over a period of months in 2002, defendant Jose Gomez-Garcia assaulted three victims.  An amended information charged defendant with forcible sodomy, forcible rape, forcible oral copulation, and forcible digital penetration.  The information also alleged defendant committed the offenses against multiple victims.  The jury found defendant guilty as charged except for one multiple victim allegation and a mistrial was found on one count of forcible digital penetration.  Sentenced to a determinate term of 116 years and an indeterminate term of 90 years to life, defendant appeals, alleging instructional error and sentencing error.  We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A third amended information charged defendant with two counts of forcible sodomy, counts one and six; six counts of forcible rape, counts two, five, and seven through ten; one count of forcible copulation, count three; and one count of forcible digital penetration, count four. (Pen. Code, §§ 286, subd. (c)(2), 261, subd. (a)(2), former 288a, subd. (c)(2), 289, subd. (a)(1).)[1] The amended information also alleged defendant committed the offenses against multiple victims (§ 667.61, subd. (e)(4)) and that defendant suffered a prior conviction for a strike offense that qualified as a serious felony (§§ 667, subds. (a), (b)-(i), 1170.12, 1192.7, subd. (c)).

A jury trial followed. The following evidence of defendant's assaults against the three victims in June, August, and October of 2002 was introduced at trial.

*L.S.—forcible sodomy (count one); rape by force (count two)*

The evening of June 29, 2002, L.S., seven months pregnant, was working as a prostitute. Defendant drove up and she got into his car. Defendant drove to an industrial area and grabbed her by the throat.

Defendant forcibly sodomized and raped L.S. Afterwards, defendant got back into his car and drove away.

L.S. called 911 from a nearby pay phone. The responding officer arrived and found her with her shirt torn. The officer took her to the hospital where she was examined and swab samples were taken. Defendant's DNA profile was found on a cutting from a stain on L.S.'s shirt.

Prior to trial, out of fear police would not believe her, L.S. lied about how she met defendant. She did not want to get into trouble.

---

[1] All further undesignated statutory references are to the Penal Code.

*K.K.—forcible oral copulation (count three); penetration by foreign object (count four); rape by force, first, second and third penetration (counts five, seven & eight); forcible sodomy (count six)*

In August 2002 K.K. was working as a prostitute. However, the night of the assault, she was not working as a prostitute.

Defendant came up to K.K., told her he had a knife, and ordered her into his car. Defendant drove to another location and tried to force her to orally copulate him. She refused and defendant choked her. K.K. could not remember every detail of the assault, but she knew defendant raped her at least once with a condom on and sodomized her without the condom. After defendant drove off, she sought help.

The officer who responded found K.K. upset and crying. She took the officer to the scene and he found a used condom on site. At the hospital, K.K. was examined and swab samples were taken. Although she could not identify defendant at trial, defendant's DNA profile was found on the swab samples.

*D.S.—rape by force, first and second penetration (counts nine & ten)*

In October 2002 D.S., a minor, had run away from home and was abandoned by the friend who had picked her up. That night, stranded, she turned to prostitution. She had one "customer" before defendant picked her up. He took D.S. to an industrial area, grabbed her in a headlock, and struck her repeatedly.

Defendant raped D.S. twice. He ejaculated. Defendant turned away and she ran. She sought help nearby and the police arrived.

Officers found D.S. crying and upset and took her to the hospital where she was examined and swabs were taken. She reported pain in, and the nurse observed bruises on, her back, face, elbow, and ear. D.S. said defendant hit her with his closed fist and forcibly raped her. Her swabs yielded DNA with defendant's DNA profile.

3

At trial, D.S. acknowledged she lied to officers and hospital staff when she said defendant used a weapon to coerce her into his car. She lied out of fear that the officers would not believe her if she confessed to prostituting herself.

*Defense Case*

In January 2007 Detective Peter Willover interviewed each victim separately.

L.S. admitted to Willover that she lied to officers about how she met defendant. Her other statements concerning the assault largely corroborated her trial testimony.

K.K. never told Willover she was a prostitute and admitted she gave the responding officer a fake phone number and address. Her other statements corroborated her trial testimony.

D.S. did not tell Willover she worked as a prostitute. However, the rest of the interview corroborated her trial testimony.

A defense investigator testified L.S. gave varying versions of how she met defendant. Her description of the assault mirrored her testimony at trial.

*Verdict and Sentencing*

The jury found defendant guilty as charged except for the multiple victim allegation on count three and a mistrial was found on count four. The jury found the prior conviction allegation true.

The court sentenced defendant to a determinate term of 116 years and an indeterminate term of 90 years to life.

## DISCUSSION

### *Instructional Error: Unanimity Instruction*

Defendant faults the trial court's instruction on unanimity, CALCRIM No. 3500 because the prosecution elected specific acts for the forcible rape charges in counts five, seven, eight, nine, and ten against K.K. and D.S. According to defendant, CALCRIM No. 3500 should only be given when the prosecution fails to elect a specific act among

4

many acts. However, the instruction told the jury it could find defendant guilty of the five counts if they agreed the prosecution proved defendant committed at least one of the acts and they agreed on which one.

*Background*

The jury considered five counts of forcible rape against K.K. and D.S. The amended information listed the acts as: (1) count five, "first penetration" as to K.K.; (2) count seven, "second penetration" as to K.K.; (3) count eight, "third penetration" as to K.K.; (4) count nine, "first penetration" as to D.S.; and (5) count ten, "second penetration" as to D.S.

After the assault, K.K. told the officer that defendant forcibly raped and sodomized her while he was standing outside the car and she was leaning into the car. Defendant forcibly raped her again in the same position. Defendant then took off the condom and forcibly raped her a third time.

The nurse who examined K.K. testified K.K. knew defendant forcibly raped her both with and without a condom. K.K. could not remember how many times or in what sequence. K.K. told Detective Willover in 2007 that defendant raped her after he sodomized her, and then raped her again without a condom.

At trial, K.K. testified defendant raped her at least once while using a condom while they were both in his car, and then sodomized her without a condom while he was outside the car. She could not recall if defendant committed any other sexual acts because of the passage of time.

D.S. testified that defendant raped her once with a condom and once without while she was on her stomach. She subsequently testified defendant did not have a condom on during either penetration. She also testified she was raped once while on her back and then again when defendant turned her over. This testimony mirrored her statements to officers at the scene.

5

In considering the unanimity instruction the court and the parties made the following observations:

"THE COURT: Okay. The unanimity instruction. I started going through it, and I don't think it applies to all of the counts. In my mind the only counts it applies to are the multiple rape counts for [K.K.] Because like sodomy, there's only one act of sodomy that's been testified to, right?

"[PROSECUTOR]: There's also multiple rape counts for [D.S.]

"THE COURT: Yeah, I'm getting to that. But my point is, to the extent there's only evidence of one act of, in this case, sodomy for [D.S.], I don't think the unanimity instruction applies.

"[PROSECUTOR]: Correct.

"THE COURT: The rape for [L.S.] I don't think applies. It's only one count. The oral copulation for [K.K.], I don't think it applies. Sexual penetration for [K.K.] I don't think applies. So then we get to -- and I think the sodomy for [K.K.] doesn't apply. So we've got multiple counts for rape, three counts of rape for [K.K.] and two counts of rape for [D.S.]

"The only thing I wondered about [D.S.] is there were two incidents testified to. One with the condom and one without. I don't recall that there was anything more than just those two acts. And I believe, correct me if I'm wrong, that the acts charged in 9 and 10 are those two.

"[PROSECUTOR]: Yes.

"THE COURT: So I wondered whether or not the unanimity applies to [D.S.]

"[PROSECUTOR]: I think it does.

"THE COURT: Okay. So I'll give it to both [D.S.] and [K.K.], but on the rape charges. I don't think it applies to any of the others. Okay.

"[DEFENSE COUNSEL]: (Nodding head.)"

6

The trial court instructed the jury with CALCRIM No. 3500: "The defendant is charged with rape by force or fear of [K.K.] in Counts five, seven, and eight and rape by force or fear of [D.S.] in Counts nine and ten. [¶] The People have presented evidence of more than one act to prove the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed."

The court next instructed with CALCRIM No. 3515: "Each of the counts charged in this case is a separate crime. You must consider each count separately and return a separate verdict for each one."

The prosecutor during closing argument discussed the forcible rape counts against K.K. and D.S., telling the jury: "You are going to get multiple verdict forms for each of the counts, okay? And some of the verdict forms are going to say first penetration, second penetration, third penetration. Because each time the penis is removed and it penetrates again, that is a new count. It only applies to Counts 5, 7 and 8 on [K.K.] And I'll tell you, on the stand [K.K.] can't remember after all these years how many times. But in her prior statement, she says he put it in my vagina, then he took it out, then he tried to get it in my anus. He couldn't. He got mad. Then he put it back in my vagina. Then he pulled out, took off the condom, put it back in my vagina and then ejaculated. That's three penetrations of her vagina. [¶] [D.S.], she says two penetrations of her vagina, right? At first she's taken from behind, he pulled it out. She says he flipped me over, he put it back in. He ejaculated. Two penetrations on [D.S.]"

Defense counsel, during argument, questioned inconsistencies in K.K.'s and D.S.'s testimony regarding the sequence of events in the sexual assaults. The prosecutor responded: "So the fact that they don't remember a finger going in or if it was vaginal rape first and then he anally raped me or, no, he anally raped me first and then he vaginally raped me, does that really matter? Does that really matter? Does that really

7

make them have zero credibility because they can't remember which order it went in first when he violated them?"

At the conclusion of closing argument, the court instructed with CALCRIM No. 3550: "Your verdict on each count and any special findings must be unanimous. This means that, to return a verdict, all of you must agree to it . . . [¶] . . . [¶] . . . If you are able to reach a unanimous decision on only one or only some of the charges, fill in those verdict forms only, and notify the court attendant."

*Discussion*

The trial court must instruct, even in the absence of a request, on the general principles of law relevant to the issues raised by the evidence. These general principles refer to those principles closely and openly connected with the facts before the court, and necessary to the jury's understanding of the case. (*People v. Sedeno* (1974) 10 Cal.3d 703, 715.) We assess the jury instructions as a whole to determine whether there is a reasonable likelihood the jury misconstrued or misapplied its words. (*People v. Campos* (2007) 156 Cal.App.4th 1228, 1237.) We review the instructions de novo. (*People v. Hamilton* (2009) 45 Cal.4th 863, 948.)

"In a criminal case, a jury verdict must be unanimous. [Citations.] . . . [Citation.] Additionally, the jury must agree unanimously the defendant is guilty of a *specific* crime. [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.)

The " 'requirement of unanimity as to the criminal act "is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed." [Citation.] . . . [Citation.] "The [unanimity] instruction is designed in part to prevent the jury from amalgamating

8

evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done something sufficient to convict on one count." [Citation.]' [Citations.]" (*People v. Norman* (2007) 157 Cal.App.4th 460, 464-465.)

According to defendant, when the prosecution has elected one act as the basis for each charged offense, the court must not give the unanimity instruction. Here, defendant claims, the prosecution elected on act as the basis for each count of forcible rape against K.K. and D.S. Therefore, the court erred in instructing the jury on unanimity.

We find the evidence much more equivocal than defendant suggests.

Defendant was charged with three counts of penetration involving K.K.: counts five, seven, and eight. The evidence at trial revealed eight possible acts: once or twice with a condom while she and defendant were in the car; once or twice with a condom while defendant was outside the car and she was leaning into the car; and the same four acts without a condom.

Defendant was also charged with two counts of forcible rape involving D.S.: counts nine and ten. The evidence at trial revealed three possible acts: with a condom while she was leaning into the car; without a condom while she was leaning into the car; or without condom when she was on her back.

Defendant attempts to discount this evidence, claiming it takes each version of K.K.'s narrative and pares them into "separate acts based on discrepancies like condom/no condom or inside car/leaning into car. K.K. never related eight possible acts occurring in any one of her narratives." Defendant then admits K.K. gave these varying versions of events to the nurse examiner at the hospital and the responding officer. As for D.S., defendant notes the trial court described two incidents, one with a condom and one without, and the prosecutor agreed. However, given the fluidity and multiplicity of

9

the acts both victims testified to, the unanimity instruction appears to have been justified and merited by the evidence.[2]

CALCRIM No. 3500 requires the jury to unanimously agree that defendant committed at least one of the acts charged and unanimously agree which act defendant committed for each offense. CALCRIM No. 3515, also given, told the jurors to consider each count separately and return separate verdicts for each count. Given together, these instructions informed the jury that they needed to agree on the acts constituting each offense. We find no error.

### *Instructional Error: Modification of CALCRIM No. 1000*

Defendant labels the court's modification of CALCRIM No. 1000, setting forth the elements of forcible rape as "unnecessary, redundant, and argumentative." Specifically, defendant objects to the court's addition of the phrase: "A separate and distinct act of sexual intercourse occurs each time a new and separate penetration, however slight, occurs."

*Background*

During jury instruction discussions, the prosecutor requested a modification of the pattern instruction, CALCRIM No. 1000, by adding a sentence to "illuminate the point that says -- or the principle that says, each rape is separate because it is a separate penetration." Defense counsel objected to any modification, arguing the instruction already told jurors that sexual intercourse for purposes of rape meant any penetration, however slight, and the requested change highlighted the same language already in the instruction.

---

[2] Defendant also points to the prosecutor's closing argument as proof the prosecution made an election as to the acts relied upon. However, elsewhere in his briefing defendant states: "Nor does 'the prosecutor's artful argument [ ] replace careful instruction.' (*People v.Malhado* [(1998)] 60 Cal.App.4th [1529,] 1539.)"

10

The court, after citing *People v. Harrison* (1989) 48 Cal.3d 321 (*Harrison*), agreed to the modification. The court instructed pursuant to CALCRIM No. 1000 and included the modification:

"The defendant is charged . . . with rape . . . by force in violation of Penal Code section 261(a).

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant had sexual intercourse with a woman;

"2. He and the woman were not married to each other at the time of the intercourse;

"3. The woman did not consent to the intercourse;

"AND

"4A. The defendant accomplished the intercourse by force, violence, duress, menace, or fear of immediate and unlawful bodily injury to the woman or to someone else.

"OR

"4B. The defendant accomplished the intercourse by threatening to retaliate in the future against the woman or someone else when there was a reasonable possibility that the defendant would carry out the threat. A threat to retaliate is a threat to kidnap, falsely imprison, or inflict extreme pain, serious bodily injury, or death.

"*Sexual intercourse* means any penetration, no matter how slight, of the vagina or genitalia by the penis. A separate and distinct act of sexual intercourse occurs each time a new and separate penetration, however slight, occurs. Ejaculation is not required."

*Discussion*

Defendant argues the court erred in modifying CALCRIM No. 10000 over defense counsel's objection. He contends the added language was "not meant for instructing

11

jurors" and emphasized "the prosecution's evidence that multiple rapes had occurred based on multiple penetrations."

We find the modification to be an accurate statement of the law that did not mislead or inflame the jury. The trial court considered *Harrison* in crafting the modification. In *Harrison*, the defendant digitally penetrated the victim three times during a single incident which lasted only a few minutes. Each insertion lasted only a manner of seconds, since each time the victim was able to break free. (*Harrison, supra*, 48 Cal.3d at pp. 325-326.) The Supreme Court held that each sexual penetration that occurred during the continuous assaultive encounter constituted a separate statutory violation. (*Id.* at p. 328)

The modified instruction aided the jury in considering the testimony of the three victims as to each act of penetration. The instruction did not lessen the prosecution's burden of proof or disadvantage the defendant.

### *Instructional Error: Witness Testimony Instructions*

The trial court instructed with CALCRIM No. 301, testimony of a single witness, and CALCRIM No. 1190, testimony of a witness in a sexual assault case. Defendant argues the court erred in giving CALCRIM No. 1190 because it is duplicative of CALCRIM No. 301.

*Background*

While discussing jury instruction, defense counsel argued that either CALCRIM No. 301 or CALCRIM No. 1190 be given, but not both. Counsel explained "1190 encompasses everything and you don't need 301." The prosecutor pointed out that CALCRIM No. 301 covers all witnesses and the CALCRIM NO. 1190 applies to witnesses to sexual assault. The court noted a statement by a single witness favorable to the defense case and defense counsel agreed it made sense to give both instructions.

12

The court instructed with CALCRIM No. 301: "The testimony of only one witness can prove any fact. Before you conclude that the testimony of one witness proves a fact, you should carefully review all the evidence." The court subsequently gave CALCRIM No. 1190: "Conviction of a sexual assault crime may be based on the testimony of a complaining witness alone."

*Discussion*

Defendant argues CALCRIM No. 1190 has "outlived its usefulness," "impermissibly directs jurors to the nature of the crime rather than the nature of the evidence," and "the combination of the two instructions has the potential to lighten the prosecution's burden of proof through misrepresentation." However, defendant also concedes the Supreme Court held otherwise in *People v. Gammage* (1992) 2 Cal.4th 693 (*Gammage*).

In *Gammage*, the Supreme Court considered former CALJIC instructions which are substantially similar to the current instructions. The defendant argued giving both instructions created a preferential credibility standard for the complaining witness. The Supreme Court disagreed: "Although the two instructions overlap to some extent, each has a different focus. CALJIC No. 2.27 focuses on how the jury should evaluate a fact (or at least a fact required to be established by the prosecution) proved solely by the testimony of a single witness. It is given with other instructions advising the jury how to engage in the *fact-finding* process. CALJIC No. 10.60, on the other hand, declares a substantive rule of law, that the testimony of the complaining witness need not be corroborated. It is given with other instructions on the legal elements of the charged crimes." (*Gammage, supra*, 2 Cal.4th at pp. 700-701.)

The court rejected the defendant's assertion that the instructions created a preferential credibility standard for the complaining witness or suggested the witness was entitled to special deference: "The one instruction merely suggests careful review when a

fact depends on the testimony of one witness.  The other tells the jury there is no legal corroboration requirement.  Neither eviscerates or modifies the other . . . [Citation.] . . . [Citation.]  The instructions in combination are no less correct, and no less fair to both sides, than either is individually." (*Gammage, supra*, 2 Cal.4th at p. 701.)

The same reasoning applies in our case.  CALCRIM No. 301 provides that the testimony of only one witness is necessary to prove any fact, but cautions that the jury must carefully review all the evidence.  CALCRIM No. 1190 provides that the conviction of a sexual assault crime may be based on the testimony of a single witness, the victim.  It does not negate the admonition that the jury consider all the evidence, nor does it accord the victim's testimony special deference.  We find no error.[3]

### *Prior Serious Felony Conviction*

Defendant asserts it was impermissible for the jury, rather than the trial court, to determine that his prior conviction for section 246 constituted a serious felony.  In addition, neither the jury nor the court made a finding that his prior conviction constituted a serious felony.

*Background*

The third amended information alleged defendant suffered a prior strike conviction in 1998 for a violation of section 246, discharge of firearm at dwelling or vehicle, a case in which defendant entered a guilty plea.  The prosecution sought to prove the conviction was a serious felony based upon section 1192.7, subdivision (c)(8), personal use of a firearm, and section 1192.7, subdivision (c)(33), discharge of a firearm at an inhabited dwelling.

The court discussed with counsel whether the court or the jury would make the finding as to whether the prior conviction constituted a serious felony.  Defense counsel

---

[3] Since we find no error in the jury instructions given, we need not address defendant's cumulative jury instruction error claim.

argued that no documents be before the jury because the prosecution had not established that the prior conviction was a strike offense and the statute was not divisible. Counsel also argued that identity should be decided by the jury, not the trial court. The prosecutor said he intended to submit the copy of the plea transcript, a certified copy of the plea form and complaint, and call a witness to explain the documents and a prison packet.

The trial court agreed it would review the documents "to determine whether or not it qualifies as a serious felony." The court determined it could use the documents to determine whether the elements of the crime have been met, "including whether or not the transcript of the change of plea indicates as a factual basis that it was an inhabited dwelling." The court found this would not be an "impermissible judicial fact finding, and that the jury does not need to hear the nature of the offense," but the jury "would still have to determine that [defendant] suffered the prior conviction."

The court again stated it would make the identity finding, and the jury would determine whether defendant suffered the prior conviction. The court requested that the prosecution "submit a certified copy of the change of plea transcript and whatever approved documents . . . you wish the Court to consider to determine whether or not it qualifies as a serious felony."

The prosecutor stated: "It is the People's request that the issue of whether it was a serious felony factually or the factual basis for the 246 conviction I believe should go to the jury. [¶] The People are offering two theories on that that is reflected in the verdict form and the instructions and will be made -- asking them to make a unanimous decision on all of those findings. [¶] The -- the two theories are personal use of a firearm under 1192.7(c)(8) and the 246 language which is under 1192.7, sub. (c)(33)."

The trial court held that, except for identity, "I think given the Court's review of the transcript, given the alternative theories that the . . . People want to proceed under, I believe it's best that this be reserved for the jury to make its factual finding."

15

The court instructed the jury: "The People have alleged in the Information that the defendant . . . was on March 17th 1998 . . . convicted of the crime of discharge of a firearm at a dwelling or vehicle, a violation of section 246 of the Penal Code, within the meaning of Section 667(a) of the Penal Code. [¶] The purpose of this part of the trial is for you to determine whether or not the People, after they present their evidence, have proven the truth of the allegation beyond a reasonable doubt."

The prosecution presented testimony from a prosecutor in the district attorney's office, Chris Carlson, who explained the prison packet, the minute order from the plea, the complaint, and the change of plea transcript.

The prison packet contained the abstract of judgment, detailing the crime for which defendant was previously convicted and the terms of imprisonment, and a fingerprint and photo page. The complaint charged defendant with shooting at an inhabited or occupied building. It also alleged the charge was a serious felony because defendant personally used a firearm. The abstract of judgment stated the conviction was for "discharge of a firearm, inhabited dwelling, et cetera." Carlson stated "et cetera" referred to the different ways section 246 could be violated. Carlson also testified that, in 1998, a serious felony under section 1192.7, subdivision (c)(8) could be committed by either personal use of a firearm or personal infliction of great bodily injury on another.

During jury instruction discussions, the trial court stated: "With respect to the Court modifying the jury instructions to eliminate any reference as to whether or not the Court is to make a finding of whether or not the two Penal Code sections -- 246 was a serious felony, the Court believes that it is the juror's province to make a factual determination, and they are, in fact making a finding of whether or not the facts support a serious felony. [¶] But it is then the province of the Court to make a legal finding of whether or not the factual finding by the jury meets the legal requirement of whether or not it is a serious felony or not. [¶] In the Court's opinion, the Defense is asking this jury to invade the province of the Court, and that is undertake a legal determination,

16

answer a question of law, not a question of fact.  That is the reason why the Court modified the instruction and verdict forms as it did.  [¶] . . . [¶]  The jury's goal and purpose here is simply to determine whether there was a conviction that was suffered by [defendant] and whether or not the People have proven the two theories."

The prosecutor during closing argument stated defendant was guilty under both theories, but the jury need only unanimously find either defendant discharged a firearm at an inhabited dwelling, vehicle or aircraft or personally used a firearm in the commission of the crime in order to find the prior conviction allegation true.  According to the prosecutor, "The only thing you're deciding is was there a conviction?" and "The other thing you're deciding is, what was is based on?"

The court instructed the jury:  "The People allege that the defendant has been convicted of a violation of Penal Code section 246 on March 17, 1998 . . . .  [¶]  In deciding whether the People have proved the allegation, consider only the evidence presented in this proceeding . . . [¶] . . . [¶]  You must decide whether the evidence proves the following:

"1. Whether the defendant was convicted for a violation of Penal Code section 246 on March 17, 1998 . . . .

"AND

"2. If you determine that the defendant . . . was convicted of a violation of Penal Code section 246, you must decide upon the following two theories:

"A.  That the crime was based upon the discharge of a firearm at an inhabited dwelling, vehicle or aircraft;

"B. The defendant . . . personally used a firearm in the commission of that crime.

"You must unanimously agree on which theory has been proved the People beyond a reasonable doubt."

The jury unanimously agreed defendant suffered a prior conviction for section 246 and that the offense had been committed by discharging a firearm at an inhabited

17

dwelling, vehicle, or aircraft, and that defendant had personally used the firearm to commit the crime.

*Discussion*

Defendant argues the serious felony prior strike finding runs afoul of *People v. Gallardo* (2017) 4 Cal.5th 120 (*Gallardo*). The court, not the jury, should have made the determination as to whether his prior conviction was a serious felony.

The Sixth Amendment contemplates that a jury, not the court, will find the facts underlying a conviction, when those facts lead to the imposition of additional punishment. (*Gallardo, supra*, 4 Cal.5th at p. 134.) Where the fact of conviction alone under a statute does not prove the offense was a serious felony, otherwise admissible evidence from the record of conviction may be examined to resolve the issue. (*People v. Miles* (2008) 43 Cal.4th 1074, 1082.) The court reviews the record of a defendant's conviction to determine whether the crime qualifies as a serious felony for purposes of the sentencing laws. (*Gallardo, supra*, 4 Cal.5th at p. 124.)

In *Gallardo*, the Supreme Court determined the limits of a trial court's authority to make findings necessary to characterize a prior conviction as a serious felony. The defendant in *Gallardo* had a prior conviction for assault with a deadly weapon or with force likely to produce great bodily injury. Two possibilities arose: if the defendant committed the assault with a deadly weapon, the conviction was a strike; if the defendant committed the assault by any means of force likely to produce great bodily injury, the prior conviction was not a strike. The trial court considered the prior conviction preliminary hearing transcript to determine which of the two crimes the defendant had been convicted of. (*Gallardo, supra*, 4 Cal.5th at p. 124-126.)

The Supreme Court disapproved of the trial court's actions. The court stated, "This means that a sentencing court may identify those facts it is 'sure the jury . . . found' in rendering its guilty verdict, or those facts as to which the defendant waived the right of

18

jury trial in entering a guilty plea.  [Citation.]  But it may not 'rely on its own finding' about the defendant's underlying conduct 'to increase a defendant's maximum sentence.' " (*Gallardo, supra*, 4 Cal.5th at p. 134.)  However, "questions about the proper characterization of a prior conviction are for a court to resolve, based on its evaluation of the facts necessarily encompassed by the guilty verdict or admitted by the defendant in pleading guilty to the prior crime." (*Id*. at p. 139, fn. 6.)

Our review of the record reveals the court followed the dictates of *Gallardo.*  The court informed counsel, "[section] 246 was a serious felony, the Court believes that it is the juror's province to make a factual determination, and they are, in fact making a finding of whether or not the facts support a serious felony."  The court followed with the statement that "But it is then the province of the Court to make a legal finding of whether or not the factual finding by the jury meets the legal requirements of whether or not it is a serious felony or not."  The court reiterated:  "The jury's goal and purpose here is simply to determine whether there was a conviction suffered by [defendant]."

Defendant acknowledges the trial court reserved the legal determination as its own decision.  However, defendant argues the court never made such a decision.

Our review of the record reveals, at the very least, the trial court made an implicit finding that the prior conviction constituted a serious felony and sufficient evidence supported the finding.  (*People v. Clair* (1992) 2 Cal.4th 629, 691, fn. 17; *People v. Chambers* (2002) 104 Cal.App.4th 1047, 1050-1051.)  The record of defendant's prior conviction, entered into evidence, showed defendant entered a guilty plea to a violation of section 246 on March 17, 1998.  The record also revealed the factual basis for the plea.

At sentencing, the court stated it had reviewed the entire record, which included the record of prior conviction.  The court found the prior conviction serious.

## Supplemental Briefing

In supplemental briefing, defendant requests remand for the trial court to exercise its discretion to strike or dismiss the four 5-year serious felony prior enhancements under amended section 667, subdivision (a). The People acknowledge the amendment applies retroactively, but argue no remand is necessary because the record reveals the court would not have exercised that discretion.

In February 2017 the trial court imposed the then mandatory term of five years for the serious prior felony convictions under section 667, subdivision (a) as to each of the three indeterminate terms (counts one, six, nine), consecutive and imposed one 5-year enhancement as to all determinate terms (counts two, three, five, seven, eight, nine, ten), consecutive.

Section 667, subdivision (a)(1) provides for a five-year enhancement for a prior serious felony conviction when a defendant is convicted of a serious felony. Under prior law, the trial court had no discretion to strike an enhancement under the statute. Former section 1385, subdivision (b) stated "This section does not authorize a judge to strike any prior conviction of a serious prior felony for purposes of enhancement of a sentence under Section 667." In September 2018 the Governor signed Senate Bill No. 1393 (2017-2018 Reg. Sess.) and the law changed, ending the limitation on sentencing discretion by removing subdivision (b), effective January 1, 2019. (See Stats. 2018, ch. 1013, §§ 1, 2.)

The parties agree the amendment is retroactive under *In re Estrada* (1965) 63 Cal.2d 740. Defendant argues remand is required for the trial court to exercise its discretion; the People argue no remand is necessary.

Remand for resentencing is not required if the record shows a trial court clearly indicated at the original sentencing it would not have stricken the enhancement even if it possessed the discretion. "The trial court need not have specifically stated at sentencing that it would not strike the enhancement if it had the discretion to do so. Rather, we

20

review the trial court's statements and sentencing decisions to infer what its intent would have been." (*People v. Jones* (2019) 32 Cal.App.5th 267, 273.)

Accordingly, we consider the trial court's reasoning in sentencing defendant. The trial court denied defendant's *Romero*[4] motion, finding defendant had an extensive criminal record including juvenile adjudications. The trial court also noted defendant's prior conviction was not remote in time and the current crime involved actual and threatened violence. After reviewing the circumstances of defendant's sexual assaults, the trial court stated: "Each of the victims endured physical and psychological violence, as well as extreme physical violations committed by the defendant, as well as verbal threats to their safety." The court found defendant's prior conviction did not reflect "a single course of abhorrent conduct." In denying the motion, the trial court considered defendant's background. Defendant was 42 years old, illegally in the country, and had no known employment or personal history. The court also denied defendant's request to impose concurrent indeterminate sentences.

The trial court subsequently sentenced defendant to full-term consecutive sentences under 667.6, subdivision (c) because the "crimes disclosed a high degree of cruelty, viciousness and callousness." The court explained: "In each attack involving each of the three victims, they were brutally and violently raped and sodomized. They were subjected to other physical violence, including being choked, punched and placed in a headlock during the assaults. One of the victims . . . was raped while visibly pregnant. After the assaults, the defendant left two of the victims in deserted industrial areas, and . . . the third victim, ran away after the assault, but she had also been driven by the defendant to a deserted industrial area."

---

[4] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

In sentencing defendant to the upper term on counts two, five, seven, eight, and ten of eight years on each count, doubled under three strikes to 16 years, the court found the crimes involved "clear planning, sophistication or professionalism" and defendant had "selected prostitutes or women who appeared to be prostitutes knowing that they were vulnerable and possibly would not be believable victims or witnesses to law enforcement." The trial court denied defendant's motion to dismiss the strike conviction due to the mandate imposed by section 667, subdivision (c)(7), but explained "if there is any doubt about the Court's authority to impose consecutive sentences under Penal Code section 667(c)(7), the court would impose consecutive sentences on all counts."

Prior to imposing sentence, the court stated: "While this trial occurred many, many months ago, nevertheless, the Court has in mind all the facts and circumstances and the testimony and evidence that was elicited throughout that trial. [¶] These were horrific crimes committed against the most vulnerable victims, women that you preyed upon because you thought they would not report to law enforcement. [¶] One of the victims . . . , was visibly pregnant while you violated her. [¶] [Defendant], it is now the time for you to answer for your crimes. You have no right or role to be in a civilized society, and you deserve to be punished, as the Court is going to punish you for your cruelty and despicable acts. [¶] I have no qualms about imposing the maximum sentence upon you. It is something you will have to answer for the rest of your life in prison."

Given the court's comments regarding defendant's culpability, we find remand unnecessary. As in *Jones*: "Besides not exercising its discretion for leniency when it could have, the trial court made clear its intention to impose the most stringent sentence it could justifiably impose." (*Jones, supra*, 32 Cal.App.5th at pp. 274-275.)

**DISPOSITION**

The judgment is affirmed.

/s/
_____
RAYE, P. J.

We concur:

/s/
_____
HULL, J.

/s/
_____
HOCH, J.