Filed 5/16/22  P. v. Suarez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | C093367 |
| Plaintiff and Respondent, | (Super. Ct. No. 20FE009187) |
| v. | |
| MARTIN GELLIN SUAREZ, | |
| Defendant and Appellant. | |

A jury found defendant Martin Gellin Suarez guilty of pimping (Pen. Code, § 266h, subd. (a)),[1] pandering (§ 266i, subd. (a)(2)), and misdemeanor resisting a peace officer during the discharge of their duty (§ 148, subd. (a)(1)).  The trial court sentenced him to an aggregate term of six years four months in prison, consisting of the upper term of six years for the pimping offense, plus a consecutive four months for the resisting

---

[1] Undesignated statutory references are to the Penal Code.

1

offense.  The trial court imposed but stayed sentence on the pandering offense pursuant to section 654.

Defendant timely appealed; after time for record preparation and supplemental briefing at defendant's request, the case was fully briefed on November 18, 2021, and assigned to this panel on November 30, 2021.  In January 2022, defendant requested and received permission to file a second supplemental brief; supplemental briefing was complete by both parties on February 28, 2022.  Appellant requested argument and the case was heard on April 20, 2022.

On appeal, defendant contends reversal is required due to prejudicial instructional errors, cumulative error, and ineffective assistance of counsel.  He adds (and the Attorney General agrees) that certain fines appearing in the abstract of judgment and a subsequently issued minute order should be stricken because they were not imposed at sentencing.  In his second supplemental brief, defendant contends we must remand the matter for resentencing in light of recently enacted Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill No. 567) effective January 1, 2022,[2] which amended the determinate sentencing law (§ 1170) by prohibiting a sentence above the middle term unless certain circumstances exist.  (See Stats. 2021, ch. 731, § 1.3; § 1170, subd. (b)(1), (2).)  We shall remand for resentencing consistent with Senate Bill No. 567 and any other recent changes in the law that may apply at the time of defendant's new sentencing.  In all other respects, we  affirm the judgment.

## BACKGROUND

Brianna Doe, a prostitute, testified at trial under a grant of immunity; she was 24 years old.

---

[2]  Because Senate Bill No. 567 was adopted as non-urgency legislation, it became effective on January 1, 2022.  (Cal. Const., art. IV, § 8, subd. (c); Gov. Code, § 9600, subd. (a).)

Brianna met defendant in late May or early June 2020. She was introduced to him by her boyfriend and pimp,[3] Bruce Anderson.

Defendant and Anderson were friends, and defendant knew Brianna was a prostitute. Brianna and defendant began a sexual relationship shortly after they met, about a week or so after Brianna and Anderson broke up due to a "falling out" over a domestic violence incident.

On June 10, 2020, the Sacramento County Sheriff's Department conducted a sting operation at Vince's Motel in Rancho Cordova after learning that Brianna was engaging in prostitution activities there. At that time, Brianna was on probation with a search condition and defendant was on parole. During the sting operation, defendant and several others were found in a room registered to Brianna; she was found alone in a nearby room.

A search of Brianna's and defendant's cell phones[4] revealed that, from June 6 to June 9, 2020, defendant encouraged and persuaded Brianna to engage in prostitution activities. Defendant's phone number was saved in Brianna's phone under the name "Daddy," which she acknowledged is a term commonly used to refer to a pimp. Brianna's phone number was saved in defendant's phone under the name "Laydee Halfdead." Defendant went by the nickname or moniker "Halfdead," and there was evidence that prostitution victims commonly "take the[ir] exploiter's last name or moniker . . . in order to be claimed by the exploiter."

---

[3] A pimp controls a prostitute and arranges clients for them in exchange for all or a portion of their earnings. A pimp is legally defined as "any person who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of the person's prostitution." (§ 266h, subd. (a).)

[4] Brianna consented to a search of her cell phone. Defendant voluntarily entered the passcode to the cell phone he was using. Although defendant claimed the phone belonged to a family member, there was evidence showing that he recently stole it.

Defendant was arrested at Vince's Motel and taken to the police station. While the officers were "finishing up some paperwork," defendant "slipped his handcuffs" in an interview room. He was secured and told to sit on a bench in the main seating area. After he said he was suicidal and jumped "head first" from the bench, he was moved to the back of a patrol car.[5] Shortly thereafter, he was placed in "maximum constraints" to "immobilize his movements," which included leg and waist straps, because he refused to stop banging his head on the metal divider separating the front seats from the rear seats. As defendant was being restrained, he resisted "slightly"; he coughed on several officers (who were not wearing face coverings), saying that he had "corona" (i.e., COVID-19). After he was secured in the back seat of the patrol car, he removed his seatbelt, which required an officer to get out of the car and resecure him. On the drive to the main jail, the officers had to stop and resecure defendant at least three times because he repeatedly removed his seatbelt.

Brianna was also taken to the police station on June 10, 2020. During her police interview that same day, which was recorded and played for the jury, she acknowledged that the man she referred to as "Daddy" was "pimping" her. She explained that the man instructed her to work (i.e., engage in prostitution activities) because he needed money to pay for hotel rooms. Brianna also acknowledged that the man was forcing her to engage in prostitution activities and explained that she gave him all of her earnings and he decided what to do with the money, including how much to give her. However, after one of the interviewing officers revealed that he knew defendant was the person Brianna referred to as "Daddy" and indicated that he wanted to arrest defendant, Brianna claimed that she only gave defendant $100, which was not money she earned from prostitution.

---

[5] At trial, a video recording of defendant jumping off the bench was played for the jury.

4

She claimed that she paid defendant to have sex with her. Upon further questioning, she clarified that she gave defendant $180.

At trial, Brianna testified that she had been a prostitute for years and did not want to testify because she believed the criminal proceedings against defendant were "wrong." She denied that she ever gave defendant any of the money she earned from prostitution activities.

## DISCUSSION

### I

*Alleged Instructional Errors*

Defendant raises three claims of instructional error on appeal, which present questions of law we review de novo. (*People v. Waidla* (2000) 22 Cal.4th 690, 733; *People v. Moore* (2018) 19 Cal.App.5th 889, 893; *People v. Hernandez* (2013) 217 Cal.App.4th 559, 568 (*Hernandez*).) As we shall explain, we find no basis for reversal. Because we reach the merits of defendant's claims, we need not and do not address his forfeiture arguments.

A. *Unanimity Instruction*

Defendant contends the trial court committed prejudicial error by failing to give a unanimity instruction sua sponte on the resisting a peace officer count, that is, instruct the jury that it must unanimously agree on which act or acts provided the basis for the verdict on that count. Defendant argues a unanimity instruction was required because the prosecution offered two separate and distinct instances of conduct to support a single count of resisting a peace officer: defendant's acts inside the police station (freeing himself from the handcuffs and jumping off the bench); and his acts in the patrol car

(banging his head on the metal divider and repeatedly removing his seat belt).[6] Defendant claims reversal is required because it was possible the jury disagreed as to which set of acts constituted the crime of resisting a peace officer. We disagree.

### 1. *Applicable Legal Principles*

A person violates section 148, subdivision (a)(1) when they willfully resist, delay, or obstruct any peace officer in the discharge or attempt to discharge any duty of the officer's office or employment. (§ 148, subd. (a)(1); *In re R.W.* (2018) 24 Cal.App.5th 145, 148.) The elements of the offense are: (1) a peace officer lawfully performing or attempting to perform his or her duties; (2) the defendant's willful resistance, obstruction, or delay of the peace officer in the performance or attempted performance of those duties; and (3) the defendant knew or reasonably should have known that a peace officer was performing or attempting to perform his or her duties.[7] (CALCRIM No. 2656; *Yount v. City of Sacramento* (2008) 43 Cal.4th 885, 894-895.) "The offense is a general intent crime, proscribing only the particular act (resist, delay, obstruct) without reference to an intent to do a further act or achieve a future consequence." (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1329.)

Although section 148, subdivision (a)(1) is most often applied to the physical acts of a defendant, such as physical resistance, hiding, or running away from a peace officer (*In re Muhammed C., supra*, 95 Cal.App.4th at p. 1329), it also applies to "passive delay

---

[6] In his appellate briefing, defendant repeatedly asserts that he freed one of his hands from the handcuffs while he was on the bench at the police station. However, the record reflects that this occurred earlier while he was in an interview room.

[7] Although not relevant to the resolution of the instructional error raised here, we note that there is a split in authority over the knowledge requirement in section 148, subdivision (a)(1). (Compare *People v. Mackreth* (2020) 58 Cal.App.5th 317, 334 [actual knowledge that person is an officer not required] with *In re A.L.* (2019) 38 Cal.App.5th 15, 22 [defendant must have actual knowledge he or she is resisting an officer in the performance of duty].)

or obstruction of an arrest, such as refusal to cooperate." (*People v. Curtis* (1969) 70 Cal.2d 347, 356, fn. 6, disapproved on another ground in *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1222, which was superseded by statute on another ground, as stated in *In re Steele* (2004) 32 Cal.4th 682, 691.) For example, in *In re Muhammed C.*, the appellate court concluded that "a reasonable inference could be drawn that appellant willfully delayed the officers' performance of duties by refusing the officers' [five] requests that he step away from the patrol car . . . ." (*In re Muhammed C.*, at p. 1330; see *People v. Williams* (2018) 26 Cal.App.5th 71, 92 [concluding that a reasonable jury could have found a violation of section 148, subdivision (a)(1) where the defendant interfered with the citation process by standing between the officer and the person being cited and ignoring multiple commands to sit down].)

In this case, the evidence adduced at trial established several acts of delay and/or obstruction, any one of which could have supported the resisting a peace officer count. The jury, however, was instructed with a modified version of CALCRIM No. 2656 that did not specify any particular act or set of acts that provided the basis for that count. Neither the prosecution nor the defense requested a unanimity instruction.

A criminal defendant has a constitutional right to a unanimous jury verdict. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132; *Ramos v. Louisiana* (2020) ___ U.S. ___, ___ [140 S.Ct. 1390, 1397].) Each individual juror must be convinced, beyond a reasonable doubt, that the defendant committed the *specific* offense he or she is charged with. (*Russo*, at p. 1132; *Hernandez, supra*, 217 Cal.App.4th at p. 569.) The unanimity requirement " 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' " (*Russo*, at p. 1132.)

"As a general rule, when violation of a criminal statute is charged and the evidence establishes several acts, any one of which could constitute the crime charged, either the state must select the particular act upon which it relied for the allegation of the

information, or the jury must be instructed that it must agree unanimously upon which act to base a verdict of guilty." (*People v. Jennings* (2010) 50 Cal.4th 616, 679; see also *People v. Russo, supra*, 25 Cal.4th at p. 1132 [if the prosecution does not elect to rely upon a single criminal act when the evidence suggests more than one discrete crime for a charged offense, then the trial court has a duty sua sponte to instruct the jury it must unanimously agree that the defendant committed the same specific act]; *People v. Norman* (2007) 157 Cal.App.4th 460, 464 ["cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act"].) The prosecution's election of the criminal act(s) relied upon to provide the basis for a charged crime may be accomplished in opening statement and/or closing argument. (*People v. Brown* (2017) 11 Cal.App.5th 332, 341; *People v. Mayer* (2003) 108 Cal.App.4th 403, 418.)

There are several exceptions to the general unanimity rule. "For example, no unanimity instruction is required if the case falls within the continuous-course-of-conduct exception, which arises 'when the acts are so closely connected in time as to form part of one transaction.' " (*People v. Jennings, supra*, 50 Cal.4th at p. 679; see also *Hernandez, supra*, 217 Cal.App.4th at pp. 572-573 ["continuous course of conduct exists when the same actor performs the same type of conduct at the same place within a short period of time"].) There also is no need for a unanimity instruction if the defendant offers essentially the same defense to each of the criminal acts, and there is no reasonable basis for the jury to distinguish between them. (*People v. Stankewitz* (1990) 51 Cal.3d 72, 100; see also *Jennings*, at pp. 679-680.) "That is, the failure to instruct is not error 'unless there is evidence based on which reasonable jurors could disagree as to which act the defendant committed.' " (*People v. Percelle* (2005) 126 Cal.App.4th 164, 181-182.)

"The omission of a unanimity instruction is reversible error if, without it, some jurors may have believed the defendant guilty based on one act, while others may have

8

believed him guilty based on another." (*People v. Arevalo-Iraheta* (2011) 193 Cal.App.4th 1574, 1589.)

 2. *Analysis*

 As we have described, the acts giving rise to the resisting a peace officer count in this case were closely related in time and place. The evidence adduced at trial established that defendant committed acts of delay and/or obstruction at the police station (freeing himself from the handcuffs and jumping off the bench) and then shortly thereafter while he was in the process of being transported to the main jail (banging his head on the metal divider in the patrol car and repeatedly taking off his seatbelt). Defendant did not testify at trial, and the evidence was uncontradicted as to his commission of these acts. In her opening statement the prosecutor recited all of the acts seriatim and then concluded: "So the evidence will show that *all of this cumulatively* delayed and obstructed the officers in the performance of their duties." (Italics added.) In closing she did the same, listing the main obstructive acts and then stating: "So their duties are delayed as they address his conduct." Defense counsel conceded in his opening statement that defendant committed the acts but claimed that defendant was merely engaging in acts of self-harm and did not intend to delay the officers in the performance of their duties. In his closing argument, defense counsel did not mention the resisting a peace officer count. Instead, he focused on the pimping and pandering counts and urged the jury to render not guilty verdicts based on the prosecutor's failure to prove those counts beyond a reasonable doubt.

 On this record, we conclude that a unanimity instruction was not required because defendant's acts of delay and/or obstruction constituted a continuous course of criminal conduct. The acts were closely connected in time and place so as to form part of one transaction. (See *People v. Lopez* (2005) 129 Cal.App.4th 1508, 1533 [the defendant's struggle with several officers within a short period of time constituted a continuous course of conduct not requiring unanimity instruction]; *People v. Jefferson* (1954) 123 Cal.App.2d 219, 221 [no unanimity instruction required where the defendant, using

9

two different knives in two different locations within a period of 10 to 15 minutes, slashed at police officers, because the acts occurred during "continuous effort on the part of the officers to disarm" him].) Further, a unanimity instruction was not required because the prosecutor elected to rely upon *all* of the uncontradicted acts of delay and/or obstruction as providing the basis for the resisting a peace officer count without singling any out. Further, the defense offered no reasonable basis (by evidence or through argument) for the jury to distinguish between the acts, that is, to conclude that defendant was guilty based on one set of acts (i.e., the acts at the police station) but not the other acts (i.e., the acts in the patrol car). (See *People v. Brown, supra*, 11 Cal.App.5th at p. 341 [no unanimity instruction required where prosecutor identifies the specific acts providing the basis for the charged crime in his or her opening statement and/or closing argument]; *Lopez*, at pp. 1533-1534 ["when a prosecutor elects to rely on multiple acts in a continuous course of conduct as one crime, no unanimity instruction is required"]; *People v. Percelle, supra*, 126 Cal.App.4th at pp. 181-182 [no unanimity instruction required if there is no evidence from which the jury could have found defendant guilty based on one act but not another].)

In any event, even if we were to assume error, the error was harmless under any standard. (See *Hernandez, supra*, 217 Cal.App.4th at p. 576 [noting that there is a split in authority as to the standard of harmless error review when a unanimity instruction is not given, and that the majority of courts have applied the more exacting *Chapman* standard of beyond a reasonable doubt].)[8] In view of the uncontradicted evidence and arguments of counsel, we are convinced beyond a reasonable doubt that the asserted instructional error did not contribute to the verdict. This is not the type of case where it is plausible

---

[8] *Chapman v. California* (1967) 386 U.S. 18. Under the *Chapman* standard, an error is harmless if the appellate court concludes beyond a reasonable doubt that the error did not contribute to the verdict. (*People v. Andrews* (2015) 234 Cal.App.4th 590, 606.)

10

that some jurors believed defendant was guilty based on one act or set of acts, while others may have believed him guilty based on another act or set of acts. (*People v. Arevalo-Iraheta, supra*, 193 Cal.App.4th at p. 1589.) Where, as here, " 'the record provides no rational basis, by way of argument or evidence, for the jury to distinguish between the various acts, and the jury must have believed beyond a reasonable doubt that defendant committed all acts if he committed any, the failure to give a unanimity instruction is harmless.' " (*People v. Curry* (2007) 158 Cal.App.4th 766, 783.) Indeed, under the circumstances presented, we have no doubt that the verdict would have been the same had the trial court given a unanimity instruction. The defense theory, which was only articulated during opening statement, was that defendant engaged in acts of self-harm and did not intend to delay the officers in the performance of their duties. The jury clearly rejected this theory, which is not a valid defense to the charged crime, as resisting a peace officer in violation of section 148, subdivision (a)(1) is a general intent crime, "proscribing only the particular act (resist, delay, obstruct) without reference to an intent to do a further act or achieve a future consequence." (*In re Muhammed C., supra*, 95 Cal.App.4th at p. 1329.)

B. *Duress Instruction*

Defendant contends the trial court prejudicially erred in instructing the jury on the pandering offense by including irrelevant language defining the term duress. He argues that this language was inapplicable in light of the prosecution's theory of guilt and the evidence presented at trial. The Attorney General concedes the error but argues it was harmless. We agree with the Attorney General.

1. *Additional Background*

The information charged defendant with pandering in violation of section 266i, subdivision (a)(2); it did not charge defendant with pandering in violation of section 266i, subdivision (a)(5), and did not allege the pandering was accomplished by duress.

11

Prior to deliberations, the trial court instructed the jury with a modified version of CALCRIM No. 1151 as to the elements of the charged pandering offense. In doing so, the court included the following inapplicable optional language from the pattern instruction that was not requested by either party: "Duress means a direct or implied threat of force, violence, danger, hardship, or retribution that would cause a reasonable person to do or submit to something that he or she would not do or submit to otherwise. When deciding whether the act was accomplished by duress, consider all the circumstances including the person's age and her relationship to the Defendant."

Neither the prosecutor nor defense counsel mentioned duress in closing argument.

2. *Applicable Legal Principles*

Pandering is "the business of recruiting a prostitute, finding a place of business for a prostitute, or soliciting customers for a prostitute." (*People v. Dixon* (2011) 191 Cal.App.4th 1154, 1159-1160.) A panderer is "one ' "who procures the gratification of the passion of lewdness *for another*." ' " (*Id.* at p. 1156.)

Subdivision (a) of section 266i has six subparts that " 'define the different circumstances under which the crime of pandering may be committed.' " (*People v. Leonard* (2014) 228 Cal.App.4th 465, 490.) The relevant subparts here are (a)(2) and (a)(5).

Section 266i, subdivision (a)(2) provides that a person is guilty of pandering if he or she "[b]y promises, threats, violence, or by any device or scheme, causes, induces, persuades, or encourages another person to become a prostitute." Our Supreme Court has held that causing, inducing, persuading, or encouraging someone to "become a prostitute" under this statute includes not only "recruiting someone to enter the prostitution trade for the first time" but also behavior directed at "someone who is already an active prostitute." (*People v. Zambia* (2011) 51 Cal.4th 965, 973, 980-981 [this provision "places the focus on the defendant's unlawful actions and intent, rather than making the targeted victim's character or occupation the determinative factors for conviction"].) The

12

*Zambia* court explained that the crime of pandering is complete under section 266i, subdivision (a)(2) when "the defendant 'encourages another person to become a prostitute' by 'promises, threats, violence, or by any device or scheme . . . .'  [Citation.] There is no requirement that defendant succeed." (*Id*. at p. 981, fn. 8.)

Section 266i, subdivision (a)(5) provides that a person is guilty of pandering if he or she "[b]y fraud or artifice, or by *duress* of person or goods, or by abuse of any position of confidence or authority, procures another person for the purpose of prostitution, or to enter any place in which prostitution is encouraged or allowed within this state, or to come into this state or leave this state for the purpose of prostitution."  (Italics added.)

### 3. *Analysis*

We see no reversible error.  The challenged language amounted to " 'an "abstract" instruction, [that is], "one which is correct in law but irrelevant." ' [Citations.]  Giving an instruction that is correct as to the law but irrelevant or inapplicable is error.  [Citation.] Nonetheless, giving an irrelevant or inapplicable instruction is generally ' "only a technical error which does not constitute ground for reversal." ' " (*People v. Cross* (2008) 45 Cal.4th 58, 67.)  Such error does not implicate the defendant's constitutional rights and is subject to harmless error review under *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Falaniko* (2016) 1 Cal.App.5th 1234, 1247.)  Under the *Watson* standard, reversal is only required if it is reasonably probable defendant would have obtained a more favorable result had the instruction not been given. (*People v. Gamache* (2010) 48 Cal.4th 347, 376.)

Defendant has failed to demonstrate any prejudice that resulted from the instructional error.  The evidence of defendant's guilt on the pandering offense, including his incriminating text messages and Brianna's police interview, was strong and significant compared to the evidence supporting a different outcome.  Moreover, as defendant concedes, the jury was correctly instructed on the elements of the charged pandering offense (that did not include the element of duress), and neither the prosecutor

13

nor defense counsel mentioned duress in closing argument. While the jury was incorrectly given the definition of a word (duress) that was inapplicable to the theory of pandering liability charged in the information, it was told that some of the instructions might not apply (see CALCRIM No. 200), which allowed it to disregard the instruction containing the definition. (See *People v. Frandsen* (2011) 196 Cal.App.4th 266, 278 ["the jury is presumed to disregard an instruction if the jury finds the evidence does not support its application"].) The jury was further instructed that it should not assume, just because the trial court gave an instruction, that the court was suggesting anything about the facts; the jury was also told that it should follow the instructions that applied to the facts after deciding what the facts were. (See CALCRIM No. 200.) We presume the jury followed these instructions. (*People v. Edwards* (2013) 57 Cal.4th 658, 723.)

Under these circumstances, we are convinced that there is no reasonable probability defendant would have obtained a more favorable result absent the instructional error.

C. "*Already a Prostitute*" Instruction

Defendant also argues that the trial court committed prejudicial error by instructing the jury that it did not matter whether Brianna "was a prostitute already" for defendant to be found guilty of pandering. But as defendant concedes, this claim of error is foreclosed by Supreme Court authority. (*People v. Zambia, supra*, 51 Cal.4th at p. 981 [holding that section 266i, subdivision (a)(2) can be violated when the target is already a prostitute].) Because we are bound by the holding in *Zambia* (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), no further discussion of this issue is required.

II

*Cumulative Error*

Defendant argues that even if none of the asserted instructional errors are independently prejudicial, the cumulative prejudicial effect of the errors requires reversal. We disagree.

14

Under the cumulative error doctrine, " 'a series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error.' " (*People v. Abilez* (2007) 41 Cal.4th 472, 523.)  "The 'litmus test' for cumulative error 'is whether defendant received due process and a fair trial.' " (*People v. Cuccia* (2002) 97 Cal.App.4th 785, 795.)  We will not reverse a judgment absent a clear showing of a miscarriage of justice.  (*People v. Hill* (1998) 17 Cal.4th 800, 844.)

The cumulative error doctrine provides no basis for reversal here.  We have found an instructional error related to the pandering offense and assumed an instructional error related to the resisting a peace officer offense and explained why each was harmless in isolation.  We reach the same conclusion with respect to the cumulative effect of the errors because they were not the type of error that multiply in force when combined, as they concern different offenses and two analytically independent issues.  The errors therefore do not have any cumulative prejudicial effect.  (*People v. Rogers* (2006) 39 Cal.4th 826, 890 [no cumulative prejudice from independent instructional errors].)

III

*Ineffective Assistance of Counsel*

Defendant contends his trial counsel was ineffective for failing to request a curative instruction and/or a mistrial after a detective testified that he was a validated gang member.  We disagree.

A.  *Additional Background*

The defense did not file a pretrial motion seeking to exclude any evidence of gang membership, and there was no exclusion order by the trial court.

At trial, Detective William Frye of the Sacramento County Sheriff's Department testified as an expert for the prosecution in the areas of pimping and pandering.  During direct examination, he was asked to interpret a number of text messages found on defendant's and Brianna's cell phones.  At one point, he was asked about a text

15

conversation between defendant and Anderson, which began with a text from Anderson saying, "Wyd crip" followed by an address. When the prosecutor asked Detective Frye to explain what was "going on in that conversation," he responded, in relevant part, as follows: "So based on the initial conversation, for the first text message from [Anderson] to [defendant] stating 'what are you doing, crip,' [Anderson] and [defendant] were both validated gang members in Sacramento County. Also, [Anderson] providing the address, . . . I knew that was Vince's Motel . . . ."

The trial court granted defense counsel's request to strike the portion of Detective Frye's testimony identifying defendant and Anderson as validated gang members. Defense counsel did not request that the jury be admonished to disregard the gang testimony. Shortly thereafter, outside the presence of the jury, the court denied defense counsel's request to strike all of Frye's testimony and his alternative request to strike all of Frye's opinions, which were predicated on the gang testimony and counsel's contention that Frye was not qualified to render expert opinions on the subjects of pimping and pandering.

B. *Applicable Legal Principles*

" 'An ineffective assistance claim has two components: A [defendant] must show that counsel's performance was deficient, and that the deficiency prejudiced the defense.' [Citations.] Whether counsel's performance was deficient, and whether any deficiency prejudiced defendant, are mixed questions of law and fact subject to our independent review." (*In re Gay* (2020) 8 Cal.5th 1059, 1073.) A reviewing "court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." (*Strickland v. Washington* (1984) 466 U.S. 668, 697.) To establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

16

probability sufficient to undermine confidence in the outcome." (*Id.* at p. 694; *In re Gay*, at p. 1086.)

" 'A mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions. [Citation.]' [Citation.] A motion for a mistrial should be granted when ' " 'a [defendant's] chances of receiving a fair trial have been irreparably damaged.' " ' " (*People v. Collins* (2010) 49 Cal.4th 175, 198.) " 'Accordingly, it would be a rare case in which the merits of a mistrial motion were so clear that counsel's failure to make the motion would amount to ineffective assistance.' " (*People v. Jennings* (1991) 53 Cal.3d 334, 380.)

C. *Analysis*

While California courts have long recognized the potentially prejudicial effect of evidence of gang membership (*People v. Albarran* (2007) 149 Cal.App.4th 214, 223), here it is unlikely that the trial court's actions did not cure any prejudice to defendant from the gang reference. Detective Frye made a single, brief statement that the trial court immediately struck from the record. No other witness made reference to defendant's membership in a gang. Nor was any gang reference made in closing argument. And the trial court specifically instructed the jury that it was not to consider stricken evidence for any purpose. (CALCRIM No. 222.) "Ordinarily, a curative instruction to disregard improper testimony is sufficient to protect a defendant from the injury of such testimony, and, ordinarily, we presume a jury is capable of following such an instruction." (*People v. Navarrete* (2010) 181 Cal.App.4th 828, 834.) There is nothing extraordinary here. Further, it is unlikely the jury was influenced by the gang evidence in rendering its verdicts, as the brief and isolated statement was trivial in comparison to the compelling evidence of defendant's guilt.

17

On this record, defendant's ineffective assistance of counsel claim fails. It is not reasonably probable that he would have obtained a more favorable verdict had his trial counsel requested a curative instruction specifically admonishing the jury to disregard the gang evidence. Further, it is not reasonably probable that the trial court would have granted a mistrial based on a finding that defendant's chances of receiving a fair trial had been " ' " 'irreparably damaged' " ' " by the gang reference. (*People v. Collins, supra,* 49 Cal.4th at p. 198.)

IV

*Added Fines*

A. *Background*

At sentencing, the trial court initially imposed a $750 restitution fine (§ 1202.4, subd. (b)(1)) and a parole revocation restitution fine in the same amount (§ 1202.45, subd. (a)), the latter of which was suspended unless parole was revoked. Immediately thereafter, defense counsel raised defendant's indigency, and after hearing from counsel and defendant the court struck "any fines and fees." The prosecutor did not object. Nonetheless, both $750 restitution fines (§§ 1202.4, subd. (b)(1), 1202.45, subd. (a)) appeared in the sentencing minute order and abstract of judgment.

While defendant's direct appeal was pending in this court, his appellate counsel filed a letter in the trial court requesting that the $750 restitution fines added to the sentencing minute order and abstract of judgment be stricken, pointing out that the restitution fines were not actually imposed at sentencing. The trial court issued a minute order denying defendant's request, writing only that "the $750 restitution fine was ordered as mandated by law." However, as we have explained and the record clearly establishes, the trial court purported to strike "any fines and fees" after hearing defendant's proffer of indigency; thus, no fines were imposed at sentencing. Fines in that amount were not ultimately ordered, and $750 restitution fines are not mandated by law for this case.

18

Defendant argues again on appeal to this court that the fines added after imposition of sentence should be stricken. The Attorney General agrees, citing *People v. Zackery* (2007) 147 Cal.App.4th 380, 385 ("Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls"). Because we are remanding the matter for full resentencing pursuant to Senate Bill No. 567 (see *post*), we need not reach this issue. On remand, the trial court shall ensure that only those fines and fees orally imposed at resentencing or specifically incorporated by reference from another identified source appear in the abstract of judgment.

V

*Senate Bill No. 567*

In his second supplemental brief, defendant contends the matter must be remanded for resentencing in light of recently-enacted Senate Bill No. 567, which amended the determinate sentencing law by prohibiting a sentence above the middle term unless certain circumstances exist. (See § 1170, subd. (b)(1), (2).) The Attorney General agrees that Senate Bill No. 567 applies retroactively to this case but contends that remand for resentencing is not warranted because any sentencing error was harmless, as the jury would have found the aggravating circumstances identified by the trial court to support an upper term sentence true beyond a reasonable doubt. We agree with defendant that this matter must be remanded for resentencing.

At the time defendant was sentenced, section 1170, subdivision (b) provided the trial court with discretion to select the lower, middle, or upper term, after considering the record, the probation officer's report, other reports, statements in aggravation or mitigation, and any other evidence introduced at the sentencing hearing, based on which term, "in the court's discretion, best serves the interests of justice." (Former § 1170, subd. (b).)

While this appeal was pending, Senate Bill No. 567 went into effect and amended section 1170, subdivision (b). (See Stats. 2021, ch. 731, § 1.3; § 1170, subd. (b)(1)-(3).) Following the passage of Senate Bill No. 567, the trial court may impose an upper term sentence "only when there are circumstances in aggravation of the crime that justify the imposition of [such] a term," and "the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(1), (2).) In deciding whether to impose an upper term sentence, the trial court may consider the defendant's prior convictions "based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

We agree with the parties that the recent amendments to section 1170, subdivision (b) apply retroactively to this case, as defendant's judgment of conviction was not yet final when Senate Bill No. 567 went into effect and there is no indication that the Legislature intended for the amendments to apply only prospectively. (See *In re Estrada* (1965) 63 Cal.2d 740, 744-745 [holding that absent evidence to the contrary, courts infer the Legislature intended amendments to statutes that reduce the punishment for a particular crime to apply to all defendants whose judgments are not yet final on the date the amendatory statute becomes effective]; see also *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 303-304, 307-308 [applying *Estrada*'s inference of retroactivity to Proposition 57, which conferred a potentially ameliorative benefit to a certain class of persons].) Further, as we next explain, we agree with defendant that this matter must be remanded for resentencing.

Here, in selecting the upper term of six years for the pimping offense, the trial court identified multiple aggravating circumstances set forth in California Rules of Court, rule 4.421. As relevant here, the court stated: "The Court's reasons for imposing the upper term include . . . the manner in which the crime was committed or carried out, indicating planning, sophistication, or professionalism, that [defendant's] prior adult

20

convictions, or sustained petitions in juvenile proceedings are numerous and of increasing seriousness.  He has served prior prison terms.  He was on parole when this offense was committed, and his prior performance on probation and parole have been unsatisfactory."

While the trial court expressed valid reasons for imposing an upper term sentence, the record does not reflect that the aggravating circumstances identified by the court were stipulated to by defendant or found true beyond a reasonable doubt.  Nor does the record reflect that the trial court relied on certified records of conviction in determining sentence.  And, at the time of sentencing, there was no presumption in favor of a middle term sentence.  On this record, we cannot agree with the Attorney General that remand for resentencing is unnecessary.  The sentencing laws have changed greatly and are continuing to change at a rapid pace.  The trial court must reconsider defendant's sentence applying the current relevant statutory schemes.  Accordingly, we will remand to the trial court for resentencing in accordance with Senate Bill No. 567 and any other recent changes in the law that may apply at the time of defendant's new sentencing.

## DISPOSITION

Defendant's sentence is vacated and the matter is remanded for resentencing consistent with this opinion.  In all other respects, the judgment is affirmed.

/s/
Duarte, Acting P. J.

We concur:


/s/
Renner, J.


/s/
Krause, J.